ACT UP!/PORTLAND, The Portland Chapter of the AIDS Coalition to Unleash Power; Michael Ambrosino; Richard Dryden; Lori Kohler, et al., Plaintiffs–Appellees,

v.

Kernon BAGLEY, Defendant,

and

Robert Oliverio; Wayne Kauffman; Kenneth Morod, Defendants–Appellants.

No. 90–35888.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 5, 1992.

Decided July 24, 1992.

Opinion Withdrawn Feb. 10, 1993.

Opinion Filed Feb. 10, 1993.

Dissenting Opinion of Circuit Judge Norris from Failure to Hear Case En Banc March 11, 1993.

Lori M. Beranak, U.S. Dept. of Justice, Washington, DC, for defendants-appellants.

Tom Steenson, Steenson & Schumann, Portland, OR, for plaintiffs-appellees.

Before: HALL, O'SCANNLAIN, and LEAVY, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

On a chilly morning in February 1989, members of the Portland Chapter of the AIDS Coalition to Unleash Power ("Act Up!/Portland") gathered at the Federal Building in Portland to protest Food and Drug Administration ("FDA") policies re-

garding the testing and approval of drugs designed to combat the AIDS virus. Appellees, six men and four women who participated in the demonstration, were arrested, loaded in a van, and taken to the United States Courthouse. There, they were strip searched by United States Marshals.

Appellees filed a complaint against Appellants, the Marshals who ordered and conducted the search, alleging causes of action under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), for violations of their Fourth Amendment rights. Appellants moved for summary judgment on the *Bivens* action on the ground that they were protected from suit by qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). After the district court denied their motion without comment, Appellants filed a motion for reconsideration. The court denied that motion as well, explaining that, at the time of the search, the law governing strip searches was clearly established. The court ruled that the question of whether, in light of that law, Appellants' decision to conduct a strip search was reasonable was one for the jury.

Pursuant to the collateral order doctrine, we have jurisdiction over interlocutory appeals from orders denying summary judgment on the basis of qualified immunity. *See Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985); *DiMartini v. Ferrin*, 889 F.2d 922, 924 (9th Cir.1989), *amended on other grounds*, 906 F.2d 465 (9th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 2796, 115 L.Ed.2d 970 (1991).

I

FACTS

Because the district court regarded the question of "reasonable suspicion" as one for the jury, it did not review the facts in the record pertaining to that determination. It appears from the record before us, however, that those facts are essentially not in dispute. At 8:00 a.m. on the morning of

February 27, 1989, the demonstration organized by Act Up!/Portland began outside the Federal Building in Portland. Although most of the demonstrators remained outside, Appellees entered the building, bringing the noisy protest to the hallway outside the FDA's office. When they refused to leave, Appellees were arrested by Federal Protective Service officers for creating a public disturbance in violation of 41 C.F.R. § 101–20.305 (1989).[1]

Appellees were escorted down to a loading dock where they were restrained in flexible plastic handcuffs and loaded into Marshals Service vans that were waiting to deliver them to the federal courthouse. As one of the vans pulled away from the building, its driver noticed that the van was tilting to the side. He radioed the Marshals Service Headquarters that his tires were losing air and that he believed they had been slashed.

When the vans arrived at the courthouse, Appellees were taken to a holding facility where several other prisoners, some of whom may have been charged with violent offenses, were being held. Immediately upon their arrival, Deputy Oliverio, the Operations Supervisor, determined that Appellees should be strip searched. He based his decision on two factors. The first was his belief, based on the van driver's report that his tires had been slashed and the fact that Appellees were wearing what Oliverio described as "bulky" winter clothing, that Appellees might be carrying concealed contraband. The second was his concern that if any of the Appellees were carrying dangerous contraband, one of the prisoners the facility was currently holding might obtain that contraband by reaching through the bars of his or her own cell into Appellees' cells. Oliverio knew nothing about what had happened at the demonstration, or about the circumstances of Appellees' arrest.

Initially, Appellees were separated by sex and placed in holding cells. The men were then brought one by one to another cell where they were strip searched by Appellants Kauffman and Morod and another deputy, within view of other male prisoners and marshals. The women were placed in a "transitory" cell, and after about an hour and forty-five minutes were taken one by one to a private interview room where they were searched by a female deputy before being placed in a "female" cell. Following the strip searches, Appellees were detained until they could be processed. They were cited and released by 12:50 p.m.

II

## QUALIFIED IMMUNITY

■ We review a district court's denial of a qualified immunity defense de novo. *Baker v. Racansky*, 887 F.2d 183, 185 (9th Cir.1989).

■ When a law enforcement officer asserts qualified immunity from liability for Fourth Amendment violations, the district court must determine whether, in light of clearly established principles governing the conduct in question, the officer objectively could have believed that his conduct was lawful. *See Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). This standard requires a two-part analysis: 1) Was the law governing the official's conduct clearly established? 2) Under that law, could a reasonable officer have believed the conduct was lawful?

■ At the time Appellants strip searched the Appellees, it was clearly established in this circuit that it is unlawful to strip search an arrestee brought to a jail facility on charges of committing a minor

---

1. Section 101–20.305 provides:
   Disturbances.
   Any loitering, disorderly conduct, or other conduct on property which creates loud or unusual noise or a nuisance; which unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots; which otherwise impedes or disrupts the performance of official duties by Government employees; or which prevents the general public from obtaining the administrative services provided on the property in a timely manner, is prohibited.

offense,[2] unless the officer directing the search possesses "a reasonable suspicion that the individual arrestee is carrying or concealing contraband." *Giles v. Ackerman*, 746 F.2d 614, 617 (9th Cir.1984), *cert. denied*, 471 U.S. 1053, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985). Reasonable suspicion may be based on "such factors as the nature of the offense, the arrestee's appearance and conduct, and the prior arrest record." *Id.* Adhering to the Supreme Court's direction in *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), the *Giles* test accounts for the fact that local jail facilities frequently confront difficult security problems, and balances those facilities' interests in controlling such problems against the privacy interests of arrestees. *See* 746 F.2d at 617.

■ The district court recognized that the legal principles governing Appellants' conduct were firmly established at the time of the search. The district court failed to consider whether, in light of those principles, a reasonable officer in Appellants' position could have believed his actions were lawful. *See Anderson*, 483 U.S. at 641, 107 S.Ct. at 3039; *Hunter v. Bryant*, — U.S. —, —, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (per curiam). That determination is preliminary to the determination whether Appellants' decision to strip search was in fact based on reasonable suspicion, which the court properly recognized is "a question for the jury as to the merits of the claim." Absent a genuine dispute of material fact, however, this issue may go to the jury only if the court has determined that the officer is not entitled to qualified immunity. If a reasonable officer could have believed that Appellants were justified under *Giles* in strip searching the Appellees, Appellants are entitled to qualified immunity. This is so notwithstanding that reasonable officers could disagree on this issue, *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986), because even officers who mistakenly conclude that reasonable suspicion is present are entitled to immunity so long as that conclusion is objectively reasonable, *Anderson*, 483 U.S. at 641, 107 S.Ct. at 3034.

Furthermore, although Appellees complained that the men were strip searched "in a semi-public area, observed by other deputy marshals and other individuals also in federal custody," the court did not consider whether the search was conducted in a reasonable *manner*. At the time of the search it was clearly established that the Fourth Amendment requires that any strip search be conducted in a reasonable manner, and accordingly that officers must respect arrestees' privacy interests. *See Vaughan v. Ricketts*, 859 F.2d 736, 741 (9th Cir.1988), *cert. denied*, 490 U.S. 1012, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989).

A line of cases decided by this Court holds that the question whether a reasonable officer could have believed probable cause existed goes to the jury unless there is only one conclusion a rational jury could reach. *See, e.g., Bryant v. U.S. Treasury Dep't*, 903 F.2d 717, 721 (9th Cir.1990); *Kennedy v. Los Angeles Police Dep't*, 901 F.2d 702, 706 (9th Cir.1989). The Supreme Court rejected this approach in *Hunter v. Bryant*, — U.S. —, —, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (per curiam), *rev'g Bryant*, 903 F.2d at 717. The Court admonished that our approach ignored the fact that qualified immunity " 'is an *immunity from suit* rather than a mere defense to liability.' " *Id.* — U.S. at —, 112 S.Ct. at 536 (quoting *Forsyth*, 472 U.S. at 526, 105 S.Ct. at 2815). Immunity "ordinarily should be decided by the court long before trial." *Id.* — U.S. at —, 112 S.Ct. at 537. The district court relied upon our decision in *Kennedy* and it did not have the benefit of the Supreme Court's decision in *Hunter*, which was decided after the district court ruled.

---

**2.** At the time of this search, the maximum penalty for violating 41 C.F.R. § 101–20.305 was a fine of $50 or imprisonment of not more than 30 days or both. *See* 40 U.S.C. § 318c (1988); 41 C.F.R. § 101–20.315 (1989). Because the maximum penalties prescribed by these provisions are so small, we have described violations of 41 C.F.R. § 101–20.3 as "petty." *See United States v. Stansell*, 847 F.2d 609, 611–612 (9th Cir.1988).

■ We interpret *Hunter* to hold that the question of whether a reasonable officer could have believed probable cause (or reasonable suspicion) existed to justify a search or an arrest is "an essentially legal question," *Forsyth*, 472 U.S. at 526, 105 S.Ct. at 2815, that should be determined by the district court at the earliest possible point in the litigation. Where the underlying facts are undisputed, a district court must determine the issue on motion for summary judgment.

■ The threshold determination of whether the law governing the conduct at issue is clearly established is a question of law for the court. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. The determination of whether the facts alleged could support a reasonable belief in the existence of probable cause or reasonable suspicion is also a question of law to be determined by the court. *Hunter*, —— U.S. at ——, 112 S.Ct. at 537; *see Anderson*, 483 U.S. at 641, 107 S.Ct. at 3039; *Malley*, 475 U.S. at 341, 106 S.Ct. at 1096; *Forsyth*, 472 U.S. at 526, 105 S.Ct. at 2815; *Harlow*, 457 U.S. at 813–20, 102 S.Ct. at 2735–39.

■ If a genuine issue of fact exists preventing a determination of qualified immunity at summary judgment, the case must proceed to trial. Where a Fourth Amendment violation is claimed, the factual issues that may preclude a determination of qualified immunity on summary judgment fall into two categories. First, a determination of reasonable suspicion or probable cause requires an inquiry as to the facts and circumstances within an officer's knowledge. *United States v. Maybusher*, 735 F.2d 366, 371 (9th Cir.1984) (reasonable suspicion), *cert. denied*, 469 U.S. 1110, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985); *United States v. Greene*, 783 F.2d 1364, 1367 (9th Cir.) (probable cause), *cert. denied*, 476 U.S. 1185, 106 S.Ct. 2923, 91 L.Ed.2d 551 (1986). These are matters of fact to be determined, where genuine disputes of a material nature exist, by the fact finder.[3] Second, the determination of what conduct underlies the alleged violation—

what the officer and claimant did or failed to do—is a determination of fact. We hold, however, that the determination whether those facts support an objective belief that probable cause or reasonable suspicion existed is ordinarily a question for the court. It is not in itself a factual issue that can preclude summary judgment.

■ Of course, if the facts alleged by the defendant officer could not support a reasonable belief that his conduct was lawful, he is not entitled to qualified immunity. If the facts are undisputed, summary judgment for the plaintiff on the merits may be appropriate. *Cf. Morgan v. Woessner*, 975 F.2d 629 (9th Cir.1992) (affirming JNOV for plaintiff where court determined that, even construing facts in defendant's favor, defendant was not entitled to qualified immunity).

■ We hold, therefore, that the district court erred by denying Appellants' motion for summary judgment without determining whether a reasonable officer in Appellants' position could have believed, in light of clearly established legal principles, that his conduct was lawful. We REVERSE the court's order denying Appellants' motion for summary judgment, and REMAND the case to determine whether there exists a genuine issue of material fact underlying the qualified immunity question. If, as appears from the record before us, there is no such issue, then the court should determine whether a reasonable officer in Appellants' position could have thought that the circumstances gave rise to individualized reasonable suspicion that Appellees were carrying contraband, and if so, whether a reasonable officer in Appellants' position could have thought that the manner in which they were searched complied with *Vaughan*. If, and only if, it answers either of these questions in the negative, the case should go to the jury to determine whether the searches violated the Fourth Amendment or, if summary judgment on that issue is appropriate, damages. If the court finds that a genuine issue of underlying fact does exist, it should postpone the qualified immunity

---

**3.** This determination does not, however, entail an inquiry into the officer's subjective intentions; merely his knowledge. *Anderson*, 483

U.S. at 641, 107 S.Ct. at 3039; *see Harlow*, 457 U.S. at 815–19, 102 S.Ct. at 2736–39.

determination until the facts have been developed at trial.

REVERSED and REMANDED.

## DISSENT FROM THE FAILURE OF THE COURT TO HEAR THIS CASE EN BANC.

WILLIAM A. NORRIS, Circuit Judge, dissenting.

*ActUp!/Portland v. Bagley* holds that the second prong of the qualified immunity test—whether "agents acted reasonably under settled law in the circumstances," *Hunter v. Bryant,* —— U.S. ——, ——, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991)—is no longer a jury question, but a question of law for the court. In so holding, *ActUp!* repudiates the settled law of seven circuits, including our own.[1]

*ActUp!* also defies our common law tradition, which since time immemorial has considered the reasonableness of human conduct to be a quintessential jury question.

1. *See, e.g., Hopkins v. Andaya,* 958 F.2d 881, 885 & n. 3 (9th Cir.1992) (per curiam) ("The question of the reasonableness of force is usually a question of fact for the jury," and "the qualified immunity inquiry is the same"); *Navarro v. Barthel,* 952 F.2d 331, 333 (9th Cir.1991) (per curiam) ("[I]t is for the jury to decide whether McCleary acted reasonably...."), *cert. denied,* —— U.S. ——, 112 S.Ct. 2324, 119 L.Ed.2d 243 (1992); *Vaughn v. Ricketts,* 950 F.2d 1464, 1470 (9th Cir.1991) (JNOV appropriately denied where "[jury] could conclude that the search was carried out in a manner which a competent prison official could have believed was reasonable"); *Barlow v. Ground,* 943 F.2d 1132, 1139 (9th Cir.1991) ("[The jury] must decide whether a reasonable official would know that she is violating ... clearly established law.") (internal quotation omitted), *cert. denied,* —— U.S. ——, 112 S.Ct. 2995, 120 L.Ed.2d 872 (1992); *Ting v. United States,* 927 F.2d 1504, 1511 (9th Cir.1991) ("A jury could reasonably conclude that it would not be reasonable for an officer to believe the use of deadly force was lawful...."); *Finkelstein v. Bergna,* 924 F.2d 1449, 1452 (9th Cir.) ("It is for the jury to decide whether Bergna's conduct was reasonable"), *cert. denied,* —— U.S. ——, 112 S.Ct. 75, 116 L.Ed.2d 49 (1991); *Conner v. City of Santa Ana,* 897 F.2d 1487, 1492 (9th Cir.) ("The reasonableness of the non-municipal defendants' actions is a question of fact for the jury"), *cert. denied,* 816 U.S. 498, 111 S.Ct. 59, 112 L.Ed.2d 34 (1990); *Bryant v. Treasury Dept.,* 903 F.2d 717, 721 (9th Cir.1990) ("Whether a reasonable officer could have believed he had probable cause is a question for the trier of fact...."), *cert. granted and judgment rev'd sub nom. Hunter v. Bryant,* —— U.S. ——, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); *Kennedy v. Los Angeles Police Dept.,* 901 F.2d 702, 706 (9th Cir.1989) (whether a reasonable officer could have believed his actions lawful "is a question for the trier of fact"); *Brady v. Gebbie,* 859 F.2d 1543, 1556 (9th Cir.1988) ("Whether a reasonable official would know that she is violating clearly established law is a question for the jury"), *cert. denied,* 489 U.S. 1100, 109 S.Ct. 1577, 103 L.Ed.2d 943 (1989); *Thorsted v. Kelley,* 858 F.2d 571, 575 (9th Cir.1988) ("the question of whether a reasonable officer ... could reasonably believe his conduct was legal is a fact-specific one, and was appropriately given to the jury"); *Schlegel v. Bebout,* 841 F.2d 937, 945 (9th Cir.1988) ("The existence of a reasonable belief that their conduct was lawful, viewed in the light of clearly established law, is a question for the trier of fact"); *Guerra v. Sutton,* 783 F.2d 1371, 1374 (9th Cir.1986) ("The trial court's determination of reasonable reliance is a finding of fact" because immunity is a "jury question"); *Haygood v. Younger,* 769 F.2d 1350, 1358–59 (9th Cir.1985) (accepting, without comment, district court's decision to submit "to the jury the question whether the defendants acted reasonably...."), *cert. denied,* 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986); *Bilbrey by Bilbrey v. Brown,* 738 F.2d 1462, 1467 (9th Cir.1984) ("although the antecedent inquiry, whether legal rights have been settled, may often best be resolved by the trial judge, [citing *Harlow*] the existence of a reasonable belief that a search is lawful, viewed in the light of the 'settled' nature of the law, is a question for the trier of fact"); *Smiddy v. Varney,* 665 F.2d 261, 266 (9th Cir.1981) (issues of probable cause and qualified immunity both "fairly put to the jury"), *cert. denied* 459 U.S. 829, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982). *See also Fludd v. United States Secret Service,* 771 F.2d 549, 554 (D.C.Cir. 1985); *McSurely v. McClellan,* 697 F.2d 309, 321 & n. 20 (D.C.Cir.1982); *Santiago v. Fenton,* 891 F.2d 373, 386–7 (1st Cir.1989); *Hurlman v. Rice,* 927 F.2d 74, 78–9 (2nd Cir.1991); *Robinson v. Via,* 821 F.2d 913, 920–21 (2nd Cir.1987); *Turner v. Dammon,* 848 F.2d 440, 444 (4th Cir. 1988); *Melear v. Spears,* 862 F.2d 1177, 1184 (5th Cir.1989); *Brandenburg v. Cureton,* 882 F.2d 211, 215–6 (6th Cir.1989).

Three circuits say it's a question for the court. *See Simkunas v. Tardi,* 930 F.2d 1287, 1291 (7th Cir.1991); *Gorra v. Hanson,* 880 F.2d 95, 97 (8th Cir.1989); *Snell v. Tunnell,* 920 F.2d 673, 696 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1622, 113 L.Ed.2d 719 (1991). The Eleventh Circuit seems to be of two minds on the issue. *Compare Sims v. Metropolitan Dade County,* 972 F.2d 1230, 1234 (11th Cir.1992) (qualified immunity a question for the court) with *Jasinski v. Adams,* 781 F.2d 843, 848 (11th Cir.1986) (qualified immunity a question for the jury).

Finally, by dividing the fact-bound question of the reasonableness of official conduct into two parts—with the jury resolving questions of evidentiary fact such as what officers knew and what they did and the court deciding the ultimate question of the reasonableness of their actions—*ActUp!* divides the decision-making process between judge and jury in a way that will cause procedural nightmares for district judges and civil rights litigants.

*ActUp!* disclaims any responsibility for inflicting such damage on the fabric of qualified immunity law, citing as the villain the Supreme Court's three-page summary reversal in *Hunter v. Bryant. ActUp!'s* reliance on *Hunter,* however, is misguided. In accusing the Supreme Court of overruling the settled law of seven circuits, without benefit of briefs or argument and without discussing or even citing that body of caselaw, *ActUp!* reads *Hunter* in a way that attributes to the Court an act of judicial arrogance and, indeed, irresponsibility. The Supreme Court rarely, if ever, makes new law in summary reversals, and it did not do so in *Hunter.*

## I

It is basic law that the qualified immunity doctrine has two prongs: 1) whether a clearly established right existed, and 2) whether a reasonable officer could have believed, in light of settled law, that his actions did not violate that right. While the first prong is always decided by the court, the second question has always been, at least in this and six other circuits, one for the jury. *ActUp!* casts aside this settled law, holding that the second prong of the qualified immunity inquiry, like the first, "is also a question of law to be determined by the court." At 873. In other words, *ActUp!* reduces the role of the jury to one of resolving disputed issues of evidentiary fact, such as "what the officer and claimant did or failed to do" and what "facts and circumstances [were] within an officer's knowledge." At 873. The ultimate question of whether a reasonable officer could have believed these actions were

lawful in light of these facts and circumstances is reserved exclusively to the court.

*ActUp!* reverses a district court order denying summary judgment for officers who strip searched plaintiffs, allegedly without probable cause and in an unreasonable manner. Although *ActUp!* is a summary judgment case, the reach of its new rule cannot be limited to summary judgment. As the opinion itself makes clear, the rule that the reasonableness of official conduct is a question of law must necessarily apply to those cases that proceed to trial:

> If a genuine issue of fact exists preventing a determination of qualified immunity at summary judgment, the case must proceed to trial. Where a Fourth Amendment violation is claimed, the factual issues that may preclude a determination of qualified immunity on summary judgment fall into two categories. First, a determination of reasonable suspicion or probable cause requires an inquiry as to the facts and circumstances within an officer's knowledge. These are matters of fact to be determined, where genuine disputes of a material nature exist, by the fact finder. Second, the determination of what conduct underlies the alleged violation—what the officer and claimant did or failed to do—is a determination of fact. We hold, however, that the determination whether those facts support an objective belief that probable cause or reasonable suspicion existed is ordinarily a question for the court.

At 873 (citations omitted). *ActUp!* offers no principle that would limit this holding to cases decided at summary judgment.

In other words, the jury continues to play a role as a fact-finder in qualified immunity cases that require a trial, but its role is limited to resolving issues of disputed fact other than the ultimate issue—whether the underlying facts support an objective belief that the officer's conduct was lawful. *ActUp!*'s division of the fact-bound issue of objective reasonableness into sub-issues of fact and law creates a practical problem of jury trial management

that *ActUp!* does not face up to. The central problem is how the jury communicates to the court its version of "the facts and circumstances within an officer's knowledge" and "what the officer and claimant did or failed to do," so the court can then determine "whether those facts support an objective belief that probable cause or reasonable suspicion existed." At 873.

Under the Federal Rules of Civil Procedure, the only tool readily available for the job is the special verdict. According to Rule 49(a), "the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made." The court then provides the jury "explanation and instruction" and the jury returns "a special written finding upon each issue of fact." Fed.R.Civ.P. 49(a).[2] But the usefulness of special verdicts as a way of communicating a jury's findings to the court is limited. Generally, they are used to answer only questions of ultimate fact, such as whether a product was defective or a person negligent, rather than questions of evidentiary fact. *See* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* Civil § 2506 (1992); James Wm. Moore, *Moore's Federal Practice* ¶ 49.03[2] (2d ed. 1992). Indeed, "[t]he court could not, consistently with the constitutional right of trial by jury, submit a part of the facts to the jury, and, itself, determine the remainder without a waiver. . . ." *Hodges v. Easton*, 106 U.S. 408, 412, 1 S.Ct. 307, 311, 27 L.Ed. 169 (1882). In cases where the ultimate issue of objective reasonableness turns on a discrete issue of evidentiary fact, such as whether the defendant police officers planted contraband on the plaintiff before arresting her, the issue could be resolved by the jury using special verdicts. *See Warlick v. Cross*, 969 F.2d 303 (7th Cir.1992). Unfortunately, not all qualified immunity cases turn on such neatly packaged issues of fact.

*ActUp!* itself is a case that is literally crawling with factual issues: Were the van tires slashed, or merely low on air? How much investigation would Officer Oliverio have required to ascertain whether the tires had in fact been slashed? What other evidence of violence or dangerous behavior did the protesters exhibit, either in custody or before arrest? Were the protesters' clothes sufficiently "bulky" to conceal contraband? Were they unusually bulky for the weather conditions on the morning of their arrest? Would a pat down search have discovered contraband the arrestees were likely to be concealing? Did Officer Oliverio take steps to determine which protesters had prior arrest records? If so, what steps and with what results? How many marshals and fellow inmates looked on as the male arrestees were searched? How much could they see? What factors prevented the defendants from conducting the strip searches of the male arrestees in private? How much additional disruption would have been caused by conducting these searches in private? If the facts in *ActUp!* were in dispute, it would be impractical to ask 12 jurors to answer each of the questions necessary to the court's ultimate determination—whether a reasonable officer could have believed his actions were lawful.

**2.** A few opinions have suggested that the question could be divided between judge and jury through the use of special interrogatories. *See, e.g., Sims v. Metropolitan Dade County*, 972 F.2d 1230, 1241 (Brown, J., dissenting) (11th Cir. 1992); *Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir.), *cert. denied* 498 U.S. 967, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990); *Rakovich v. Wade*, 850 F.2d 1180, 1202 n. 15 (7th Cir.) (*en banc*), *cert. denied*, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988). None of these opinions makes any attempt to explain how the technique would work in trial practice. Rule 49(b) discusses special interrogatories, but only in the context of allowing general verdicts to be accompanied by answers to special interrogatories. The purpose of Rule 49(b) interrogatories is to provide a check on the propriety of the general verdict, not to deny juries the prerogative of returning general verdicts deciding the ultimate issue of liability. Thus the suggestion that special interrogatories be used is properly viewed through the lens of Rule 49(a), because this is the only portion of the rule that applies when the court ultimately decides liability.

While *ActUp!* is an unreasonable search case, its rule dividing the objective reasonableness question into sub-issues of fact and law is no less problematic in other qualified immunity contexts. Consider, for example, an excessive force case, where multiple police officers stand accused of excessively beating an arrestee. *ActUp!* requires the court to determine the jury's thinking on many different factual disputes: How many blows landed? How hard, and to which parts of the body? Which officer administered which blows? Which if any were unnecessary to effect the arrest? Did the suspect at any point pose a danger to the officers or to bystanders? If so, when, and how much force was necessary to prevent the danger from materializing? Answers to all of these questions, and more, might be necessary to allow the court to decide whether a reasonable officer could have believed the force to be excessive.

How can a jury answer such questions and communicate its answers to the judge? The question answers itself and demonstrates the limits on the usefulness of special verdicts, especially in cases involving the reasonableness of human conduct, a fact-bound, totality-of-the-circumstances inquiry. We have historically asked juries to decide such ultimate questions of reasonableness in part because they are so fact-bound that they cannot practically be divided between judge and jury. The only practical rule is the one that was in effect in seven circuits before *ActUp!*: The second prong of the qualified immunity test, including the question whether a reasonable officer could have believed his conduct to be lawful, is a question of fact that must be submitted to a jury.

Another reason courts have historically left questions of the reasonableness of human conduct to the jury is that reasonableness is a cultural inquiry, a matter of community mores, and thus inherently a jury question. In the language of a century ago:

> Twelve men of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer; these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion. This average judgment thus given it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than does one man, that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge.

*Railroad Company v. Stout*, 84 U.S. (17 Wall.) 657, 664, 21 L.Ed. 745 (1873). Susceptible to judicial determination only when the facts are sufficiently extreme that a rational jury could reach only one conclusion, reasonableness is usually "a question of fact—which means not only that it is meant for the jury rather than the judge, but also that there is no single 'right' answer. It could go either way." Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 *U.Chi.L.Rev.* 1175, 1181 (1989).[3] In short, reasonableness is, and has always been, a jury question. Akhil R. Amar, *The*

---

**3.** Justice Scalia was discussing reasonableness primarily in the context of negligence law, but he recognized that the concept is widely applicable, including to questions of "whether or not a policeman fired upon a felon in unavoidable self-defense." *Id.* at 1182. Similarly, what the Supreme Court said over 100 years ago in discussing negligence applies with equal force to objective reasonableness in qualified immunity:

> It is well settled that where there is uncertainty as to the existence of negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by a jury; and this, whether the uncertainty arises from

a conflict in the testimony, or because the facts being undisputed, fairminded men will honestly draw different conclusions from them.

*Richmond & Danville Railroad v. Powers*, 149 U.S. 43, 45, 13 S.Ct. 748, 749, 37 L.Ed. 642 (1892) (citations omitted). *Accord Rogers v. Missouri Pacific Railroad*, 352 U.S. 500, 505, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957); *Tennant v. Peoria & Pekin Union Railway*, 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944); *Lutz v. United States*, 685 F.2d 1178, 1185 (9th Cir. 1982).

*Bill of Rights as a Constitution,* 100 *Yale L.J.* 1131, 1179 (1991).

## II

*ActUp!* cites five Supreme Court cases for the proposition that the objective reasonableness of an officer's conduct is a question for the court, not the jury: *Hunter v. Bryant,* —— U.S. ——, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987), *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985), *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986), and *Harlow v. Fitzgerald,* 457 U.S. 800, 813–820, 102 S.Ct. 2727, 2735–39, 73 L.Ed.2d 396 (1982). At 873. Of these cases, only *Hunter* arguably bears on the issue, and even it fails to support *ActUp!*'s holding.

## A

I will discuss the pre-*Hunter* cases briefly before turning to *Hunter.* In none of these cases did the Supreme Court ever suggest that the objective reasonableness inquiry is a question of law for the court.

In *Harlow v. Fitzgerald,* 457 U.S. at 813–820, 102 S.Ct. at 2735–39, the Court rejected a subjective good faith test as the second prong of the qualified immunity doctrine and replaced it with an objective test. The Court explained it was adopting the objective test because the purpose of the qualified immunity doctrine was to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment," *id.* at 818, 102 S.Ct. at 2738, and because the subjective good faith of government officials was rarely susceptible to determination on summary judgment and costly to litigate at trial. *Id.* at 816, 102 S.Ct. at 2737. The Court said nothing that even hints at tampering with the respective roles of judge and jury in applying the second prong of the qualified immunity doctrine to the facts of the case. Indeed, our circuit has long since interpreted *Harlow* contrary to the way *ActUp!* does. In *Bilbrey by Bilbrey v. Brown,* 738 F.2d 1462, 1467 (9th Cir.1984), after reviewing *Harlow,* we concluded that,

> although the antecedent inquiry, whether legal rights have been settled, may often best be resolved by the trial judge, the existence of a reasonable belief that a search is lawful, viewed in the light of the 'settled' nature of the law, is a question for the trier of fact.

*ActUp!* offers to no explanation why it does not follow *Bilbrey*'s reading of *Harlow.*

In *Mitchell v. Forsyth,* 472 U.S. at 526, 105 S.Ct. at 2815, the Court held that a nonfinal order denying qualified immunity is immediately appealable under the collateral order doctrine. Once again, the Court offered " 'the general costs of subjecting officials to the risks of trial,' " *id.* (quoting *Harlow,* 457 U.S. at 816, 102 S.Ct. at 2737), as its rationale for this special rule allowing public officials to take interlocutory appeals. And once again, the Court said nothing about the respective roles of judge and jury in qualified immunity cases. In seizing upon *Mitchell*'s reference to qualified immunity as an "essentially legal question," at 873, *ActUp!* ignores the fact that *Mitchell* involved the *first* prong of the qualified immunity inquiry—whether the right allegedly violated was clearly established—not the second prong. *Mitchell,* 472 U.S. at 530, 105 S.Ct. at 2817 ("The question of Mitchell's immunity turns on whether it was clearly established in November 1970 ... that such wiretaps were unconstitutional"). Whether the right was clearly established at the time of the incident in question has always been a legal question, so there is nothing new about *Mitchell*'s characterization of it as such.

*Malley v. Briggs,* 475 U.S. at 341, 106 S.Ct. at 1096, rejected an officer's claim that he should be cloaked with absolute, not just qualified, immunity. The Court reasoned that qualified immunity was sufficient protection for police officers because *Harlow* eliminated the subjective malice component, meaning fewer cases would survive summary judgment and proceed to trial. The Court said nothing, however, about whether objective reasonableness

was a question of law for the court or a question of fact for the jury.

Finally, in *Anderson v. Creighton,* 483 U.S. at 641, 107 S.Ct. at 3039, the Court rejected a plaintiff's assertion that the officer's subjective intent was relevant. Reaffirming the objective reasonableness standard of *Harlow,* the Court said: "The relevant question in this case ... is the objective (albeit fact-specific) question whether a reasonable officer could have believed Anderson's warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed." *Id.* Once again, *ActUp!* fails to explain how *Anderson*'s reaffirmation of the objective reasonableness standard supports its new rule barring juries from applying the law to the facts of a particular case. As with *Harlow,* this circuit has long since considered *Anderson*'s relevance to the question whether objective reasonableness is a jury question and read *Anderson* precisely contrary to the way *ActUp!* does. In *Thorsted v. Kelley,* 858 F.2d 571, 573 (9th Cir.1988), we cited *Anderson* in rejecting the contention that "qualified immunity is an issue of law that may not be submitted to the jury." In fact, we said that *Anderson* stands for exactly the opposite of what *ActUp!* now cites it for: "the question of whether a reasonable officer ... could reasonably believe his conduct was legal *is a fact-specific one, and was appropriately given to the jury.*" *Id.* at 575 (emphasis added).

In sum, neither *Harlow, Mitchell, Malley* nor *Anderson* provides any support for *ActUp!*'s rejection of the law of seven circuits that objective reasonableness is a jury question. Indeed, this settled body of circuit law was developed when the pre-*Hunter* Supreme Court cases cited by *ActUp!* were already on the books. Until *ActUp!,* no judge on this court, not even a member of the *ActUp!* panel, had discovered *ActUp!*'s novel reading of the pre-*Hunter* cases.[4] *ActUp!*'s reliance on these Supreme Court cases would be surprising enough if the meaning of the pre-*Hunter* cases were an issue of first impression in this circuit. That *ActUp!* had the benefit of a decade of circuit precedent interpreting those cases makes its misuse of them that much more egregious. Moreover, the existence of this body of circuit precedent decided with the benefit of the pre-*Hunter* cases means that *ActUp!* cannot rely on the pre-*Hunter* cases in support of its novel holding. Absent intervening Supreme Court authority, only an en banc court can overrule this circuit's settled reading of the pre-*Hunter* cases.

## B

I now turn to *Hunter v. Bryant,* —— U.S. ——, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991), which *ActUp!* reads as rejecting the law of the Ninth Circuit, and by implication of six other circuits. *Hunter* is a three-page per curiam that summarily reverses *Bryant v. U.S. Treasury Dept., Secret Service,* 903 F.2d 717 (9th Cir.1990). The facts are straightforward, albeit dramatic. James Bryant sued Secret Service agents for arresting him without probable cause. The pivotal issue was whether the agents had reasonably interpreted a letter written by Bryant as a threat to assassinate President Reagan. The district court denied the agents' motion for summary judgment based on qualified immunity. We affirmed, reasoning "that the agents had failed to sustain the burden of establishing qualified immunity because their reason for arresting Bryant ... was not the most reasonable reading of Bryant's letter." *Hunter,* —— U.S. at ——, 112 S.Ct. at 536 (*citing* 903 F.2d at 722).

The Supreme Court reversed summarily, holding that we had erred in denying summary judgment on our theory that the letter was susceptible to "*a more reasonable interpretation*" than that it constituted a threat. *Hunter,* —— U.S. at ——, 112 S.Ct. at 536 (*citing* 903 F.2d at 722) (emphasis in original). The agents' interpretation, said the Court, need not be the *most* reasonable one. The correct inquiry was whether a reasonable officer *could* have believed that the letter constituted a threat to assassinate the President. *Id.* —— U.S. at ——,

---

**4.** *See* note 1.

112 S.Ct. at 537 ("the court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed five years after the fact"). The Ninth Circuit, in other words, had misapplied the *Anderson* standard. Because *Anderson* was clearly established law, it is not surprising the Supreme Court summarily reversed our misapplication of it, holding that the agents were entitled to summary judgment on qualified immunity. The Court refused to let our clear error stand, particularly in a case that involved the "specter of Presidential assassination." *Id.* —— U.S. at ——, 112 S.Ct. at 537.[5]

In contrast to this narrow reading of *Hunter, ActUp!*'s reading of *Hunter* is expansive. According to *ActUp!, Hunter* rejected the law of seven circuits that the reasonableness of official conduct is a question of fact. After reciting that a line of Ninth Circuit cases so held, *ActUp!* simply says in the next sentence that "[t]he Supreme Court rejected this approach in [*Hunter*]." At 872.

*ActUp!*'s reading of *Hunter* is incompatible with *Hunter*'s status as a summary reversal. It is not disputed that at least seven circuits agreed that objective reasonableness was a jury question. Nor is it disputed that the Supreme Court does not use its summary reversal power to overturn established circuit law or to resolve circuit conflicts. Summary dispositions are "rare and exceptional disposition[s], 'usually reserved ... for situations in which the law is well settled and stable, the facts are not in dispute, and the decision below is clearly in error.'" Stern, Gressman, and Shapiro, *Supreme Court Practice* 281 (6th ed. 1986) (quoting *Schweiker v. Hansen*, 450 U.S. 785, 791, 101 S.Ct. 1468, 1472, 67 L.Ed.2d 685 (1981) (Marshall, J., dissenting)). It would be astonishing, if not downright shocking, for the Supreme Court to summarily overrule the settled law of a majority of circuits in so cavalier a fashion.

Had the Court intended in *Hunter* to erase this body of law, it surely would have called for briefing and argument before deciding the case. In its published opinion, it would have surveyed the case law and explained its reasons for disagreeing with the circuits that treated the reasonableness of officers' conduct as a jury question. It did none of this. The Court not only disposed of the case summarily, it neither cited nor discussed any of the circuit cases on point, except the single Ninth Circuit decision it reversed. Nor did the Court discuss the policy reasons for adopting a new rule of qualified immunity law, as it did in *Harlow* and *Mitchell*. Unless we are to assume the Court was acting irresponsibly, the only conceivable explanation for the Court's silence is that it did not believe *Hunter* overturned the settled law of at least seven circuits.

Now let us consider the reasons the Supreme Court did offer for overturning the Ninth Circuit's decision in *Hunter*. I quote in full the passage I believe forms the cornerstone of *ActUp!*'s view that *Hunter* rejected the rule that the second prong of the qualified immunity test is a jury question:

> The decision of the Ninth Circuit ignores the import of [*Harlow, Davis v. Scherer*, 468 U.S. 183, 195, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984), *Mitchell, Malley*, and *Anderson*]. The Court of Appeals' confusion is evident from its statement that "[w]hether a reasonable officer could have believed he had probable cause is a question for the trier of fact, and summary judgment ... based on lack of probable cause is proper only if there is only one reasonable conclusion a jury could reach." 903 F.2d at 721. This statement of law is wrong for two reasons. First, it routinely places the question of immunity in the hands of the jury. Immunity ordinarily should be decided long before trial. *Mitchell*, 472 U.S. at 527–29 [105 S.Ct. at 2816–17]. Second,

---

**5.** This reading of *Hunter* echoes Justice Scalia's concurrence. *Hunter*, —— U.S. at ——, 112 S.Ct. at 537 (Scalia, J., concurring) (while the "Ninth Circuit's opinion purported to apply the stan-

dard for summary judgment that today's opinion demands," it erred "in finding, on the facts before it, that the standard was not met.").

the court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed five years after the fact.
— U.S. at —— – ——, 112 S.Ct. at 536–37.

To be sure, this paragraph from *Hunter* is no paradigm of legal writing. Indeed, Justice Kennedy dissented from the judgment of summary reversal because he though *Hunter* merited full briefing and argument.[6] Obviously concerned that the meaning of the opinion was less than clear, he anticipated that later courts would find themselves immersed in the process of parsing it. Justice Kennedy was truly prescient.

Consider *Hunter*'s first criticism of the Ninth Circuit's statement of the law. The Court comments that it "routinely places the question of immunity in the hands of the jury." This criticism of the *consequences* of our statement sheds no real light on where or how the Court thought we misstated the law. Nor does the Court's reminder that "[i]mmunity ordinarily should be decided by the court long before trial." In using without edification such qualifiers as "routinely" and "ordinarily", the Court's language provides no guidance for distinguishing cases that should be disposed of before trial from those that should go to trial. But however murky the Court's meaning, one thing is clear: The passage provides no support for the proposition that the question of the reasonableness of an officer's conduct is a question of law that may never be submitted to a jury. Qualifiers such as "routinely" and "ordinarily" imply that the question in *some instances* should indeed be decided by the jury.[7]

The Court's second attempt to explain the flaw in the Ninth Circuit's statement of the law is somewhat more successful. The Court explains that we should have asked "whether the agents acted reasonably," not whether their behavior was the *most* reasonable response. This criticism shows that the Court was focused on the second part of the Ninth Circuit's statement as being so patently wrong as to warrant summary reversal. Pretty clearly, we erred in saying that "summary judgment ... based on lack of probable cause is proper only if there is only one reasonable conclusion a jury could reach." The ultimate inquiry in determining qualified immunity is not whether probable cause existed, but whether a reasonable officer could have believed it did. This formulation of the test, which the Supreme Court stated in *Harlow, Anderson,* and *Hunter,* provides public officials with much greater protection against liability for damages than our court's formulation in the statement the Court criticized. Read this way, *Hunter* makes perfect sense. This reading explains the Court's concern that our statement of the law "routinely place[d] the question of immunity in the hands of the jury;" it explains why the Court thought we clearly misapplied its existing case law; and it is totally consistent with *Hunter*'s status as a summary reversal.

In contrast, neither of the reasons advanced by the Court as to why we were wrong in *Hunter* explains *ActUp!*'s new rule. Unfortunately, *ActUp!* provides precious little analysis to support its reading of *Hunter*. It merely cites the case as overturning settled Ninth Circuit law recognizing objective reasonableness as a question of fact, and adds a couple of sentences that emphasize the Court's long-standing goal of having qualified immunity decided on summary judgment whenever possible. *See* at 872. It appears that *ActUp!* interprets *Hunter* as having rejected

---

6. "Given this disagreement [regarding the basis for reversal], as well as the precedential weight that later courts will accord to all of the questions presented in the case and addressed here in express terms or by clear implication, the case does not lend itself to summary disposition." *Hunter,* — U.S. at ——, 112 S.Ct. at 540 (Kennedy J., dissenting).

7. In referring to the "question of immunity" as a question that does not "routinely" go to the jury, the Court could only have been referring to the second prong of the qualified immunity test. The first prong—whether the law governing the officer's conduct is clearly established—is never decided by the jury.

not just the second, but also the first clause of the language the Court quoted from the Ninth Circuit opinion, the clause that "whether a reasonable officer could have believed he had probable cause is a question of fact for the jury...." That is precisely the settled law *ActUp!* now overturns.

But this first clause could not have been the target of the Court's ire. First, as discussed above, had the Court intended to overturn this rule, it would have necessarily intended to overturn the settled law of a majority of circuits, an outcome entirely inconsistent with *Hunter*'s status as a summary reversal. Second, the Court's criticism that qualified immunity should not "routinely" go to the jury suggests that on at least some occasions it should. And an issue that even occasionally goes to the jury cannot be an issue of law. Third, the Court's observation that qualified immunity should "ordinarily" be decided long before trial provides no support for *ActUp!*'s rule, whose primary effect is to reallocate authority from jury to judge in cases that do in fact go to trial. Finally, the Court's concern that the Ninth Circuit misapplied the *Anderson* standard in looking for a "more reasonable interpretation" of the letter is a criticism that bears no relation to whether it is the court or the jury who applies that test.

In sum, *ActUp!*'s rule reducing the jury's role in qualified immunity cases is not only unworkable in trial practice, it finds no support in any Supreme Court precedent. The Court has made a candid effort, in *Harlow, Mitchell,* and *Anderson,* to reduce the burdens of trial on public officials by permitting more cases to be weeded out at summary judgment. But the Court has never suggested that in cases substantial enough to survive summary judgment, public officials should be spared trial by jury. Neither in *Hunter*

nor in any other case has the Supreme Court so much as hinted that the doctrine of qualified immunity protects public officials, not just from insubstantial lawsuits that can be weeded out at summary judgment, but also from jury trials in cases that survive summary judgment.

### III

*ActUp!* is the last chapter in a long story of judicial error. In *Bryant,* this court erred by misstating the qualified immunity inquiry and misapplying the *Anderson* formula. In reversing the Ninth Circuit, the Supreme Court did little better. *Hunter* is hardly a model of clarity. Its failure to measure up to the high standards of judicial craftsmanship we expect from the highest court in the land cannot be excused by the fact that we may have erred in misapplying the law and denying qualified immunity to Secret Service agents charged with protecting the life of the President. The Court acted within its prerogatives in summarily reversing our court, but that prerogative does not relieve the Court of its duty to speak clearly. All Article III judges take an oath to uphold the law, and for us, the law is what the Supreme Court says it is. If the Court intended to use its summary reversal power to overrule the settled law of seven circuits, I believe it should have taken special pains to express its intent clearly, because we would not normally expect the Court to do so in a three-page per curiam, written without benefit of briefs or argument. If the Court merely intended to reverse the Ninth Circuit for misapplying settled law to the facts of the case, then it also had a duty to express that intent clearly. The hard truth is that the Court did neither, fully justifying Justice Kennedy's concern with the task that courts would face parsing the case in the future.[8]

---

8. Perhaps *ActUp!*'s expansive reading of *Hunter* will give the Court pause the next time it hands down an opinion without the benefit of briefing or argument. For good reason, summary per curiams are "the most controversial form of summary disposition." Stern, Gressman, and Shapiro Supreme Court Practice (6th ed. 1986)

280. When the Court summarily disposes of the case, it "runs a great risk of rendering erroneous or ill-advised decisions that may confuse the lower courts." *Harris v. Riviera,* 454 U.S. 339, 349, 102 S.Ct. 460, 466, 70 L.Ed.2d 530 (1981) (Marshall J., dissenting).

*ActUp!* compounds the errors of our panel and the Supreme Court, overreading *Hunter* and accusing the Court of overturning without comment the settled law of seven circuits. Unfortunately, *ActUp!* is not unique. Only a few months ago, *Elder v. Holloway,* 975 F.2d 1388 (9th Cir.1992), relied on a stray phrase from *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984), to support the novel proposition that in considering a civil rights plaintiff's challenge to the qualified immunity defense, appellate courts cannot consider any case authority the plaintiff did not cite to the district court. In dissent, Judge Kozinski argued that the Supreme Court would not have changed the law so radically without a clear statement and explanation. He said,

> Had the Court meant to adopt [a new rule] it surely would have used clearer language to explain what it was doing.... The Court would have also provided some rationale or explanation for adopting such a startling new rule. It certainly would not have adopted it without any discussion at all.

Kozinski, J., dissenting (from failure of the court to rehear the case en banc), 984 F.2d 991, 994. Judge Kozinski's persuasive logic applies with equal force in *ActUp!.*

### Conclusion

This circuit, along with six others, has long held that objective reasonableness is a jury question, subject only to the traditional limitations of summary judgment, directed verdict and JNOV. If the Supreme Court intends to overrule that law, that is the Court's prerogative. It is unreasonable, however, for an inferior court to interpret a summary disposition as doing so when a narrower interpretation of the Court's decision is available.