19 F.3d 26
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Joe BRAY; Brenda Bray, individually and each as parents of
Decedent, Jeffrey Dale Bray, Plaintiffs-Appellees,
v.
COUNTY OF SAN DIEGO, Defendant,
and
William Fewell, Deputy; John S. Wickham, Deputy; Does 1
Through 50, Defendants-Appellants.
 No. 93-55446.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 31, 1994.
Decided March 2, 1994.
 
 Before: D.W. NELSON, REINHARDT, and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 I.
 
 2
 Appellants William C. Fewell and John S. Wickham appeal the district court's ruling, denying their motion for summary judgment as to their defense of qualified immunity. Fewell and Wickham were sued under 42 U.S.C. Sec. 1983 for the shooting death of Jeffrey Dale Bray, which occurred during a law enforcement stop of Bray's vehicle. We affirm the ruling of the district court.
 
 II.
 
 3
 Joe and Brenda Bray brought this 42 U.S.C. Sec. 1983 action against the defendants for the shooting death of their son, Jeffrey Dale Bray ("Bray"). On the afternoon of May 18, 1990, Bray was driving home in his red pickup truck. At that time, members of the San Diego Sheriff's Department were responding to a report of a stolen red pickup truck.
 
 
 4
 Deputy William C. Fewell ("Fewell") left the Vista police substation in response to the report. Although Fewell had been given the license plate number of the stolen vehicle, he had failed to write it down. On his way out of the station, he encountered Reserve Deputy John S. Wickham ("Wickham"), who was off duty and out of uniform. Fewell asked Wickham to join him. Wickham agreed.
 
 
 5
 Upon reaching Hacienda Boulevard, the deputies observed a red pickup truck and followed it. Although they also observed a second red or red-orange pickup truck, they continued to follow the first one. They used neither their flashing lights nor their siren, and did not otherwise attempt to attract the driver's attention. The first truck turned out to be Bray's pickup truck. Unfortunately, it was not the stolen truck that had been reported to the Sheriff's Department.
 
 
 6
 Bray turned off Hacienda Boulevard and into the parking lot of an apartment complex. While in the parking lot, Bray stopped his pickup and began backing up. The deputies were approximately ten feet behind the truck and thought that Bray was attempting to evade arrest by ramming the police car. In fact, Bray was backing up because he wanted to talk to his friend Jimmy Gambrell, who had greeted him from the right side of the parking lot. Bray was looking directly at Gambrell when he backed up and did not see the sheriff's car's warning lights go on.
 
 
 7
 When Bray stopped in the parking lot prior to backing up to greet his friend, Wickham exited the sheriff's car with his gun drawn and positioned himself behind the open passenger door. When Bray's truck started to move backwards, Wickham yelled at Bray to stop and then fired three shots at his head, killing him instantly.[1] At about this time, Fewell exited the car and, within moments of doing so, fired one additional shot at Bray's truck.
 
 
 8
 The defendants moved the district court for summary judgment based on qualified immunity.[2] The court denied the motion as to Fewell and Wickham on the ground that the law governing their conduct was clearly established and that their use of deadly force was not objectively reasonable under the circumstances. Fewell and Wickham filed a timely notice of appeal.
 
 III.
 A.
 
 9
 We have jurisdiction over this case under the collateral order doctrine. Under that doctrine, we generally have jurisdiction over interlocutory appeals from orders denying summary judgment on the basis of qualified immunity. See Act Up!/Portland v. Bagley, 988 F.2d 868, 870 (9th Cir.1993) (citing Mitchell v. Forsyth, 472 U.S. 511, 530 (1985)). There have been no prior interlocutory appeals in this case. See Nelson v. Silverman, 999 F.2d 417 (9th Cir.1993).
 
 B.
 
 10
 The plaintiffs contend that we do not have jurisdiction because Fewell and Wickham failed to raise the defense of qualified immunity in their answer to the complaint. We reject this claim. Although Fewell and Wickham do not use the precise words "qualified immunity" in their answer, we conclude that they raised the defense of qualified immunity in sufficiently concrete terms:
 
 
 11
 As a ninth, separate and distinct affirmative defense, said defendants allege that each and every act or omission of said defendants was made in good faith and in the reasonable belief in the necessity or propriety of such act or omission for the proper execution and enforcement of the law.
 
 
 12
 Accordingly, we reject the plaintiffs' forfeiture argument and turn to the merits of the case.
 
 IV.
 
 13
 We review a district court's rejection of a qualified immunity defense de novo. See, e.g., Act Up!/Portland, 988 F.2d at 871. We apply a two-part analysis. First, we determine whether the law governing the official's conduct was clearly established. Second, we determine whether, under that law, a reasonable officer could have believed that his conduct was lawful. Id. Even where an officer's actions are based on a mistaken conclusion, he is entitled to immunity as long as the mistaken conclusion is objectively reasonable. Id. at 872.
 
 A.
 
 14
 First, we conclude that the basic law governing the deputies' conduct was clearly established at the time of Bray's death. In 1985, the Supreme Court held that an officer could use deadly force to effect the arrest of a fleeing felon only if, under the circumstances, he reasonably believed such force was necessary to protect himself or others from death or serious physical harm. See Tennessee v. Garner, 471 U.S. 1, 11 (1985); cf. Ting v. United States, 927 F.2d 1504, 1510 (9th Cir.1991). Bray was killed in 1990, five years after Garner was decided. Accordingly, the principles set forth in Garner are controlling here.
 
 B.
 
 15
 Second, we conclude that the application of that law to the facts of this case is clear and should have been apparent to a reasonable deputy. In short, under the established law and the circumstances of this case, the deputies' belief that deadly force was necessary to protect them from death or serious physical harm was not objectively reasonable. The Supreme Court has held that all claims of excessive force should be analyzed under an objective reasonableness standard. See Graham v. Connor, 490 U.S. 386 (1989). The defendant's reasonableness must be judged from the perspective of a reasonable officer on the scene and take into account the fact that he is often forced to make split-second judgments. Id. at 396-97. We examine each of the defendants' contentions in this light.
 
 1.
 
 16
 First, the defendants argue that their use of deadly force was objectively reasonable because they believed that Bray was reaching for a firearm. The district court properly rejected this argument. There is no indication that Bray produced any firearm during his deadly encounter with them or that he had one in his possession. Certainly, the officers do not contend that they ever saw one. Moreover, Bray was not facing the deputies when he was shot by Wickham. A mere suspicion that a suspect may be reaching for an unobserved gun, even when unaccompanied by a fear that the suspect is trying to ram the rear of his truck into the front of the officers' vehicle, is insufficient, without more, to render the use of deadly force appropriate. Given the established state of the law, this should have been apparent to a reasonable officer. To permit the mere appearance of reaching to constitute justification for a law enforcement shooting under the circumstances present here would vitiate Garner. There must be a reasonable fear that deadly force is necessary to protect the officer or others from death or serious injury.
 
 
 17
 Our decision is consistent with Curnow v. Ridgecrest Police, 952 F.2d 321 (9th Cir.1991). In Curnow, we held that it was unreasonable for a police officer to shoot at a suspect who was reaching for, but not pointing, a semi-automatic rifle and who was not facing the police. If a reasonable officer should not have used deadly force in Curnow, where there was a firearm in plain view, then a reasonable officer certainly should not have done so here.
 
 2.
 
 18
 Second, the defendants argue that their use of deadly force was objectively reasonable because they believed that Bray was ramming his truck to disable them and their car. As indicated above, we reject this argument, even when coupled with the reaching suggestion. Assuming that the truck was backing up for a distance of ten feet at a rapid rate of speed--as the officers claim (but which Gambrell disputes)--there would still be insufficient reason to shoot at the driver or the vehicle in a manner that might cause the driver's death. It was objectively unreasonable for Fewell or Wickham to believe that they would suffer death or serious physical harm from the backing up of Bray's truck. A reasonable officer should have known that firing at Bray under the circumstances described by Fewell and Wickham was contrary to established law.
 
 
 19
 We note in addition that, during the entire time that Bray was backing up, he was looking to his right at his friend Gambrell, and that at no time during the deputies' pursuit of Bray did they ever use their police siren or loudspeaker to alert him to their presence. Given these facts, there was no reason for the officers to believe that they were under attack. However, as we have indicated, we need not base our decision on this point.
 
 V.
 A.
 
 20
 Our conclusion that Wickham is not entitled to a qualified immunity defense is also supported by other evidence on which we need not rely. In 1984, Wickham had been suspended from the volunteer reserves due to reports of his overly zealous and aggressive behavior. The complaining sergeant had recommended that Wickham be terminated and had characterized Wickham as a "liability" to the department. Wickham had also been rejected from the police department reserves in 1981 because he lied about his eyesight in order to meet the department's standards.[3]
 
 B.
 
 21
 Fewell, on the other hand, contends that he is entitled to qualified immunity because he did not actually injure Bray. He cites Ting v. United States, 927 F.2d 1504 (9th Cir.1991), in which we held that certain non-shooting officers were not liable because they were not the "cause in fact" of the civil-rights plaintiff's injuries. Id. at 1511. Fewell argues that because his bullet did not actually hit Bray, he was not the "cause in fact" of Bray's injuries and thus is entitled to qualified immunity.
 
 
 22
 We reject Fewell's argument. The passage from Ting on which Fewell relies expressly recognized the distinction between shooting officers and non-shooting officers in cases in which the shooting could not reasonably have been anticipated. Id. at 1511 ("The non-shooting agents may be held liable only if they personally deprived Ting of a constitutional right by failing to perform an act which they were legally required to do which was the cause of fact of Ting's injuries." (emphasis added)). In Ting, the event occurred quickly, and the non-shooters were taken off guard. By contrast, Fewell personally fired at Bray's truck and was thus a shooting officer. Accordingly, the passage from Ting on which Fewell relies is simply not applicable here.
 
 
 23
 In any event, other Ninth Circuit cases have rejected Fewell's "cause in fact" argument. For example, in Ward v. City of San Jose, 967 F.2d 280 (9th Cir.1991), the defendants argued that a special jury finding--a finding that they were not the "proximate cause" of the plaintiff's death--led inexorably to the conclusion that their conduct was objectively reasonable as required by the Fourth Amendment. We rejected the defendants' argument there, holding that the finding was not "necessarily dispositive" of the Fourth Amendment issue. Id. at 285. Here, Fewell makes the identical argument--because he was not the "cause in fact" of the plaintiff's death, his conduct must have been objectively reasonable. Applying Ward to this case, we reject Fewell's argument. A finding that Fewell was not the "cause in fact" of Bray's death is not necessarily dispositive of the Fourth Amendment issue.[4]
 
 
 24
 As stated above, the proper analysis is whether a reasonable officer in Fewell's position should have known that firing at Bray was contrary to established law and whether he either fired or contributed sufficiently to the fact of firing so that liability attaches. Here, Fewell admits that he fired at Bray's truck without first making an effort to ascertain the source of the gunfire. S.E.R. tab 81, at 249 ("I thought [the shots] could have been either/or [from the truck or from Wickham]."). For that reason alone, we conclude that his use of deadly force is not protected by qualified immunity. Firing a deadly weapon at Bray without first ascertaining whether, as was most likely to be the case here, his partner was the source of the gunfire and was firing at the truck simply because it was moving backwards conflicts squarely with the rule established in Garner. Put differently, a reasonable officer in Fewell's position should have known that firing at Bray's truck under the circumstances of this case was contrary to established law.
 
 C.
 
 25
 We recognize that Wickham and Fewell, but particularly Fewell, were required to make split-second judgments. However, not every split-second firing is immune from prosecution simply because it was not planned in advance. An objective reason must exist for the officer to believe that the use of deadly force is necessary to protect himself or others from death or serious injury. That was simply not the case here. Moreover, that fact should have been apparent to a reasonable officer from the rule established in Garner. Accordingly, neither Wickham nor Fewell is entitled to a qualified immunity defense.
 
 VI.
 
 26
 We affirm the judgment of the district court rejecting Fewell's and Wickham's qualified immunity defense.
 
 
 27
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 It is possible that Bray's truck actually hit the sheriff's car before Wickham fired. If so, that would not change our analysis
 
 
 [2]
 The original defendants included, among others, the County of San Diego and the San Diego County Sheriff's Department
 
 
 [3]
 Plaintiffs also showed that Wickham was fired after the Bray shooting. Defendants contend in their reply brief that evidence of Wickham's termination is inadmissible as evidence of remedial conduct. Cf. Fed.R.Evid. 407. However, the rules of evidence do not apply to discovery proceedings, and the defendants failed to object to this evidence at Wickham's deposition or at the proceedings below. Nonetheless, we in no way consider the evidence of Wickham's discharge here
 
 
 [4]
 In any event, it is entirely possible that, on the basis of the record thus far presented, Fewell was the "cause in fact" of Bray's death. First, Fewell failed to supervise properly Wickham's use of excessive force. Wickham was a reserve deputy who was not in uniform and who was not even scheduled to be on duty at the time of Bray's death. Accordingly, Fewell was in charge, and he was responsible for Wickham's actions. Second, Fewell failed to give Wickham sufficient briefing, orientation, or information about the pursuit. Had he done so, Wickham might not have used deadly force in an objectively unreasonable manner. Third, Fewell failed to write down or communicate to Wickham the license plate number of the stolen truck. Had he done so, they might have discovered that Bray's pickup truck was the wrong vehicle