Rafael **SALAZAR,** individually, and as Consul General of the Republic of Guatemala in Los Angeles, Plaintiff,

v.

J. **BURRESCH,** et al., Defendants.

No. CV 98–2479 AHM(RCx).

United States District Court, C.D. California.

April 28, 1999.

Stephen Allan Shikes, Glendora, CA, for plaintiff.

Bill Lockyer, Attorney General of the State of California, Donald R. Currier, Deputy Attorney General, Los Angeles, CA, for defendants.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS BURRESCH AND MYHRE

MATZ, District Judge.

### INTRODUCTION

In 1997, Plaintiff Rafael Salazar was the Consul General of the Republic of Guatemala in Los Angeles, California. On April 4, 1997, at approximately 1:00 p.m., Plaintiff was involved in a car accident on the Pomona Freeway. Defendant California Highway Patrol ("CHP") Officer J. Burresch arrived on the scene shortly after the accident. According to Burresch, Plaintiff appeared intoxicated. Plaintiff informed Burresch that he was consul general and entitled to immunity. After Plaintiff allegedly became unruly, Burresch handcuffed Plaintiff and caused him to be transported to the police station. At the station, Plaintiff's handcuffs were removed and Burresch completed his investigation by issuing Plaintiff a citation. Plaintiff then submitted to a breath test which showed a blood alcohol level of .20%, well above the .08% level of presumed intoxication under California law. He is cur-

rently awaiting trial in Los Angeles Municipal Court on drunk driving charges.

## PROCEDURAL HISTORY

On April 3, 1998, Plaintiff filed this civil rights action against the following defendants: the California Highway Patrol ("CHP"), the Chief of the CHP, and the State of California (collectively referred to as the "California Defendants"); the County of Los Angeles, Richard de la Sota (a deputy district attorney for the County), Gil Garcetti (the District Attorney for the County), and Conrad Aragon (a judge of the East Los Angeles Municipal Court) (collectively referred to as the "County Defendants"); and CHP Officers J. Burresch (the officer who met Plaintiff on the freeway and at the CHP station) and L. Myhre (the officer who operated the breath test machine) (collectively referred to as the "CHP Officer Defendants").

The complaint alleges the following seven claims:

1. "Violation of federal treaty rights," *i.e.*, Article 41 of the 1963 Vienna Convention on Consular Relations ("VCCR") which provides that "Consular officers shall not be liable to arrest or detention pending trial, except in the case of a grave crime and pursuant to a decision by a competent judicial authority" (against all Defendants);

2. Violation of 42 U.S.C. § 1983, based upon Defendants' alleged violation of the VCCR (against all Defendants);

3. Violation of the Alien Tort Act, 28 U.S.C. § 1350 (against Burresch only) on the ground that Burresch committed a tort by violating Plaintiff's VCCR rights;

4. Violation of 18 U.S.C. § 112 (against Burresch only);

5. False arrest (against the California Defendants and the CHP Officer Defendants);

6. Assault and battery (against Burresch only); and

7. "Negligent training, hiring and retention-Monnel [sic] Claim" (against the California Defendants only).

By order filed July 15, 1998, the Honorable John G. Davies, the judge previously assigned to this case, granted the motion to dismiss of the County of Los Angeles, Richard de la Sota (a deputy district attorney for the County), Gil Garcetti (the District Attorney for the County), and Conrad Aragon (a judge of the East Los Angeles Municipal Court). Judge Davies granted these Defendants' motion on the ground that, because Plaintiff's claim against them related only to the pending criminal charge, that claim was barred by the abstention doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

By order filed August 26, 1998, this Court ordered Plaintiff to show cause why the claims against the California Defendants should not be dismissed for failure to comply with Fed.R.Civ.P. 4(m)'s service requirement. Plaintiff failed to respond to that order. Thus, on September 11, 1998, this Court dismissed the California Defendants. Thus, the sole remaining defendants are CHP Officers J. Burresch and L. Myhre (the "CHP Officer Defendants"). This matter is currently before the Court on these Defendants' motion for summary judgment.

The Court has reviewed the papers submitted in connection with this motion, the file in this case and oral argument of counsel. For purposes of this order, it is unnecessary for the Court to resolve the question of whether there is a private right of action under the VCCR. The Court will assume (without in any way finding) that there is such a cause of action. *Cf. United States v. Lombera–Camorlinga*, 170 F.3d 1241 (9th Cir.1999) (individuals have standing to enforce VCCR rights defensively; court declined to "address the question whether individuals have an affirmative right of action" under a different section of the VCCR). As set forth in detail below, the Court concludes that even if a private right of action under the VCCR does exist, no material issue of fact exists on the question of whether the CHP Officer Defendants violated Plaintiff's rights under the VCCR; they did not. Because the

sole factual basis for each of Plaintiff's claims is Plaintiff's contention that these Defendants violated the VCCR, the Court grants the CHP Officer Defendants' motion for summary judgment in its entirety.

## FACTS[1]

On April 4, 1997, Plaintiff was the Consul General of the Republic of Guatemala. After an appointment, Plaintiff began driving to his office in downtown Los Angeles. Sometime between 12:20 p.m. and 1:00 p.m., Plaintiff became involved in an accident on the 60 Freeway near Downey Street. According to Plaintiff,

> As I was driving in lane No. 2 a car forced me to swerve to my right, I crossed two lanes and bumped the rear tire of a large truck; I then swerved to my left and went across four lanes of traffic and hit the center divider of the freeway.

Salazar Decl. ¶ 5. At approximately 1:00 p.m., Defendant Burresch was on duty and was dispatched to investigate a vehicle accident. When he arrived at the scene, Burresch observed a tractor trailer rig on the right shoulder and a disabled passenger car in the No. 1 traffic lane (i.e., the lane closest to the median). Plaintiff was behind the wheel of the passenger car.

Burresch observed that Plaintiff displayed several objective symptoms of alcohol influence, including slurred, slow speech and red, watery eyes. In addition, Burresch smelled the odor of an alcoholic beverage coming from Plaintiff. Plaintiff produced to Burresch his U.S. Department of State Driver License and Consular Identification Card and directed Burresch's attention to the reverse side of the identification card, which stated:

> This person has been duly recognized by the Department of State and under International Law shall not be amenable to jurisdiction with respect to acts performed in the exercise of consular functions. This form of immunity must be asserted before, and proven to, the appropriate judicial authorities. The bearer shall not be liable to arrest or detention pending trial except on a warrant for a felony offense.

> The bearer shall be treated with due respect and a notice of violation may be issued.

After reviewing Plaintiff's diplomatic papers, Burresch decided not to arrest Plaintiff in light of his apparent diplomatic immunity. Due to Plaintiff's apparent level of intoxication and the extensive damage to his vehicle, however, Burresch decided, pursuant to CHP policy, to have Plaintiff transported to the CHP area office to complete the investigation of the accident, verify Plaintiff's diplomatic status and arrange transportation of Plaintiff to his residence. Burresch explained this to Plaintiff, who appeared to agree. At some point, Officer French also arrived at the scene.

According to Plaintiff, however, after Burresch reviewed Plaintiff's identification card, Burresch responded that "he didn't care who I was and proceeded to shove me against my car, placed me under arrest, and handcuffed me." Salazar Decl. ¶ 6. According to Burresch, at some point during the encounter, Plaintiff "became extremely agitated and began shouting and flailing his arms about wildly. Due to plaintiff's obvious intoxication and combative behavior, I placed him in handcuffs solely for purposes of officer safety." Burresch Decl. ¶ 5.[2] Burresch's police report concerning the incident, tendered into evidence by Plaintiff, states that:

1. Unless otherwise stated, the parties do not dispute the facts. Plaintiff did not submit a separate document in which he states whether or not he disputes the CHP Officer Defendants' contentions in their separate statement. Instead, Plaintiff submitted only his own "Statement of Genuine Issues in Opposition to Defendants' Motion for Summary Judg-

ment." Where nothing in Plaintiff's separate statement or declaration contradicts the CHP Officers Defendants' separate statement or declarations, the Court deems those facts undisputed.

2. Plaintiff responded that he "totally disagree[s] with him that I was a thereat [sic] to

Prior to transportation in the patrol unit, I asked Mr. Salazar to turn around so that I may due [sic] a preliminary frisk to ascertain if Mr. Salazar had any type of weapon, per C.H.P. policy. At this time, Mr. Salazar turned around to let me conduct a preliminary frisk, as I touched Mr. Salazar he attempted to spin around and pull away from my grasp. Mr. Salazar began yelling in Spanish and in English. Mr. Salazar was hand cuffed at this point to ensure the safety of the transporting officer. Plaintiff's Opposition Exh. 2 at report pages 8–9.

Burresch left the handcuffs in place allegedly for officer safety reasons during transport to the area CHP station. Officer French drove Plaintiff to the station.[3] Burresch also returned to the station.

According to Burresch's police report (also submitted by Plaintiff), "Once in the [CHP] office and Mr. Salazar calmed down, the handcuffs were removed." Altogether, Plaintiff remained in handcuffs for an hour and a half. At the hearing on this motion, Plaintiff's counsel conceded that *at least* 60 minutes of this 90 minute period were consumed by the altercation on the freeway and the travel to the police station.

At the station, Burresch completed his investigation and contacted the United States State Department to verify Plaintiff's diplomatic status. Burresch explained to Plaintiff that he was not under arrest and issued Plaintiff a citation ("Notice to Appear") which Plaintiff refused to sign. After issuing the citation, Burresch had no further contact with Plaintiff.

At the station, Acting Officer in Charge Angel Gutierrez spoke to Plaintiff in Spanish and assisted him in attempting to contact someone at his residence to come to the station to pick him up. That effort was unsuccessful. Also at the station, Plaintiff requested that he be permitted to make a telephone call to the Embassy in Washington. An unidentified person denied his request.

Because Plaintiff kept insisting that he was not drunk, Officer Gutierrez informed him that, although he was not required to take a blood alcohol test, he could take it voluntarily if he wished to support his claim. Plaintiff told Officer Gutierrez that he wished to take the test. The test was administered by Defendant Myhre.[4] The test indicated that Plaintiff's blood alcohol level was .20%, well above California's maximum permissible level of .08%.

After Plaintiff took the test, an unidentified CHP officer drove Plaintiff home.

Plaintiff was never formally placed under arrest, booked or placed into custody. No officer ever read Plaintiff his Miranda rights.

## LEGAL STANDARDS

Fed.R.Civ.P. 56(c) provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(d) permits the entry of partial summary judgment. The Supreme Court clarified the standard for summary judgment in three important cases. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

his safety, or that of the transporting officer. Moreover, what officer Burresch identifies as 'combative behavior' was nothing more than trying to assert my rights as instructed and allowed by the United States Department of State." Salazar Decl. ¶ 12.

3. The parties have not introduced any evidence concerning what happened to Salazar's car.

4. At the hearing, Plaintiff's counsel acknowledged that the only basis for the claims against Myhre is that he administered this test.

The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248, 106 S.Ct. 2505. If the moving party seeks summary adjudication with respect to a claim or defense upon which it bears the burden of proof at trial, its burden must be satisfied by affirmative admissible evidence. *Houghton v. South,* 965 F.2d 1532, 1536–37 (9th Cir.1992). By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex,* 477 U.S. at 325, 106 S.Ct. 2548.

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. Rule 56(e). Summary judgment will be entered against the non-moving party if that party does not present such specific facts. *Id.*

In assessing whether the non-moving party has raised a genuine issue, its admissible evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Id.* at 252, 106 S.Ct. 2505. As the Court explained in *Matsushita:*

> When the moving party has carried its burden under Rule 56(c), its opponent

must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

475 U.S. at 586–87, 106 S.Ct. 1348. The evidence relied upon must be admissible under the rules governing the admission of evidence generally. *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542 (9th Cir.1989).

## DISCUSSION

### I. Claim for Violation of Plaintiff's Rights under Article 41 of the 1963 Vienna Convention on Consular Relations.

The CHP Officer Defendants argue that this Court should dismiss all of Plaintiff's claims because all are based fundamentally upon the single allegation that Defendants violated his rights under the VCCR.[5] According to these Defendants, the VCCR provides Plaintiff with no private right of action. Even if it did, they argue that they never arrested Plaintiff, and to the extent that they detained him, it was for the lawful purpose of completing the accident investigation and for the safety purpose of arranging transportation to take Plaintiff home. Finally, the CHP Officer Defendants argue that even if the VCCR does provide a private right of action and even if their conduct violated the VCCR, the Court should grant their motion for summary judgment on the ground of qualified immunity. Because the record contains no disputed issue of material fact indicating that the officers violated the VCCR, the Court need not resolve whether Plaintiff may state a private cause of action under the VCCR or whether the CHP Officer Defendants would otherwise be entitled to qualified immunity.[6]

---

5. Plaintiff does not dispute these Defendants' contention that all of his claims are premised upon the VCCR.

6. Although the CHP Officer Defendants' motion may be construed to assert qualified immunity as a defense to each of Plaintiff's claims, they did not brief the issue of whether a court may properly apply such a defense to any of Plaintiff's claims, other than to his claim under 42 U.S.C. § 1983. Neither did

■ Article 41 of the 1963 Vienna Convention on Consular Relations ("VCCR") provides that "Consular officers shall not be liable to arrest or detention pending trial, except in the case of a grave crime and pursuant to a decision by a competent judicial authority." "A 'grave crime' has been interpreted by the Department of State to mean a felony." *U.S. v. Cole*, 717 F.Supp. 309, 323 n. 5 (E.D.Pa. 1989) (holding that Yugoslavian consul-general was not entitled to consular immunity from money laundering charges because money-laundering constituted a "grave offense") (citing S.Exec.Rep. No. 91–9, 91st Cong., 1st Sess. at 14 (1969)). "Article 41 does not provide consular officers with immunity for non-grave crimes; rather, it has been interpreted as requiring only that consular officers not be imprisoned until convicted." *Cole*, 717 F.Supp. at 323 n. 5 (citing Report of the International Law Commission to the General Assembly ("ILC Report"), 16 U.N.Supp. (No. 9) at 28, art. 41, comment 13, reprinted in [1961] 2 Y.B. Int'l L. Comm'n 88, 116). *See also* ILC Report at 28, comment 13 ("Paragraph 1 of [article 41] refers to immunity from arrest and detention pending trial. . . . It should be pointed out that this paragraph by no means excluded the institution of criminal proceedings against a consular official.").

The United States Department of State has published guidelines interpreting the VCCR and thereby providing guidance to law enforcement officers on how the VCCR applies to their duties. Currier Decl.Exh. 2.[7] That publication, titled "Guidance for Law Enforcement Officers—Personal Rights and Immunities of Foreign Diplomatic and Consular Personnel," provides in pertinent part as follows:

**General**

The vast majority of the persons entitled to privileges and immunities in the United States are judicious in their actions and keenly aware of the significance attached to their actions as representatives of their sending country. On rare occasions, however, a member of this class or of his or her family may be involved in a criminal law violation. The more common violations involve traffic offenses, such as . . . driving while intoxicated . . . .

When, in the course of responding to or investigating an apparent violation of criminal law, a police officer is confronted with a person claiming immunity, official Department of State identification should immediately be requested in order to verify the person's status and immunity . . . .

When proper identification is available, the individual's immunity should be fully respected to the degree to which the particular individual is entitled. If it is established that the individual is entitled to the full inviolability and immunity of a *diplomatic agent*, he or she may not be arrested and should not, except in extraordinary circumstances (see **Personal Inviolability *vs.* Public Safety below**), be handcuffed or detained in any way . . . .

**Personal Inviolability *vs.* Public Safety**

. . . All such personal inviolability is, however, qualified by the understanding,

---

Plaintiff respond to any such argument. Given the potentially broad and significant policy implications of applying such a defense to an alleged violation of an international treaty, this Court is loath to rule upon such an argument without adequate briefing by the parties and perhaps, an amicus brief from the Department of State. The Court notes, however, that the Ninth Circuit has not restricted qualified immunity solely to claims arising under section 1983 or *Bivens*. *See, e.g., Doe v. Attorney General of U.S.*, 941 F.2d 780, 799 (9th Cir.1991) (applying qualified immunity to claim under Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794)). *See also Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290 (11th Cir.1998) (citing *Doe*, and holding that county employee could assert qualified immunity defense to claim under the Fair Housing Act).

7. Plaintiff previously submitted this document in opposition to the County Defendants' motion dismiss and does not object to the Court's considering it in connection with this motion.

well established in international law, that the host country does not give up its right to protect the safety and welfare of its populace and retains the right, in extraordinary circumstances, to prevent the commission of a crime. *Thus, in circumstances where public safety is in imminent danger or it is apparent that a serious crime may otherwise be committed, police authorities may intervene to the extent necessary to halt such activity. This naturally includes the power of the police to defend themselves from personal harm.*

**Traffic Enforcement**

... [A] police officer should never hesitate to follow normal procedures to intervene in a traffic violation which he or she has observed—even if immunity ultimately bars any further action at the scene, the officer should always stop persons committing moving violations, issue a citation if appropriate, and report the incident in accordance with usual procedures. *Sobriety tests may be offered in accordance with local procedures but may not be required or compelled. If the police officer judges the individual to be intoxicated, the officer should not (even in the case of diplomatic agents) permit the individual to continue to drive. The officer's primary concern in this connection should be the safety of the community and of the intoxicated individual. Depending on the circumstances, the following options are available. The officer may, with the individual's permission, take the individual to the police station or other location where he or she may recover sufficiently to drive. The officer may summon, or allow the individual to summon, a friend or relative to drive; or the police officer may call a taxi for the individual. If appropriate, the police may choose to provide the individual with transportation.*

Currier Decl.Exh. 2 (italics added).

Plaintiff contends that Burresch violated his rights under the VCCR by handcuffing Plaintiff and by taking him to the station

(essentially "arresting" him). Plaintiff contends Defendant Myhre violated his rights under the VCCR by administering the breath test. The Court deals with each of these allegations separately.

**A. Handcuffing Plaintiff.**

■ The undisputed facts demonstrate that only after Plaintiff became "extremely agitated and began shouting and flailing his arms about wildly ... [and][d]ue to plaintiff's obvious intoxication and combative behavior," did Burresch handcuff Plaintiff. Moreover, Burresch did so out of concern for his own safety. Burresch Decl. ¶ 5. *See also id.* at ¶ 6 ("Because of plaintiff's combative behavior, the handcuffs were left in place for officer safety reasons during transport (by Officer French) to the area office.") Although Plaintiff disputes Burresch's description of Plaintiff's behavior as "combative" and denies that he was ever a threat to Burresch's safety, Plaintiff does not dispute that he was shouting or flailing his arms about wildly. Salazar Decl. ¶ 12 ("I've read the declarations [sic] of Officer [sic] Burresch and totally disagree with him that I was a thereat [sic] to his safety, or that of the transporting officer. Moreover, what officer Burresch identifies as 'combative behavior' was nothing more than trying to assert my rights as instructed and allowed by the United States Department of State.").

The provision in the Department of State manual that permits officers to "intervene to the extent necessary" to halt activity that places public safety in "imminent danger" includes (but is not limited to) defending themselves from personal harm. Under these facts, this Court concludes that there is no triable issue on whether Burresch's *initial* handcuffing of Plaintiff violated the VCCR; it did not. *Cf. Alexander v. County of Los Angeles,* 64 F.3d 1315, 1320 (9th Cir.1995) ("It is well settled that when an officer reasonably believes force is necessary to protect his own safety or the safety of the public,

measures used to restrain individuals, such as stopping them at gunpoint and handcuffing them, are reasonable.").

Moreover, even assuming that Plaintiff remained handcuffed for an hour and a half, this Court concludes that, under the circumstances, that length of time was permissible under the VCCR. Burresch originally placed the handcuffs on Plaintiff at the accident site, because of his concern about safety. It took at least 60 minutes to bring Plaintiff to the station. According to Gutierrez, at the station Plaintiff was still "in an agitated state." Gutierrez Decl. ¶ 3. But after Plaintiff "calmed down," the handcuffs were removed. Plaintiff's Opposition Exh. 2 (Burresch Police Report at p. 9). When a person is obviously drunk, has been shouting and flailing his arms and appears "agitated," it is reasonable to believe that he still presents a safety threat. Thus, this Court concludes that there is also no triable issue on the question of whether leaving Plaintiff in handcuffs for an hour and a half violated the VCCR; as interpreted by the Department of State, it did not.

### B. Taking Plaintiff to the Station.

█ Plaintiff argues that rather than taking him to the station, Burresch should have taken Plaintiff home. Opposition at 34 ("Instead, once Officer Burresch recognized Salazar's consular status when contact was first made at the scene of the accident, he should have transported Salazar to his residence."). Plaintiff argues that by taking him to the station, Burresch effectively put him under arrest, in violation of the VCCR. Burresch argues that he was justified in taking Plaintiff to the station. He explains: "Due to plaintiff's level of intoxication and extensive damage to his vehicle, I decided, pursuant to CHP policy, to have plaintiff transported to the CHP area office in order to complete my investigation of the accident, verify plaintiff's diplomatic status and arrange transportation of plaintiff to his residence." Burresch Decl. ¶ 6. At the station, Burresch "completed my investigation and contacted the

United States State Department to verify plaintiff's diplomatic status." *Id.* at ¶ 7.

The Department of State manual does not expressly allow an officer to take an individual to the station to conduct an investigation. (Nor does it forbid it.) Burresch has not introduced any evidence that he would not have been able to verify Plaintiff's diplomatic status at the accident scene (*e.g.,* by radioing in to the station and having someone there contact the State Department). However, the cars of Burresch and Salazar were stopped in a freeway lane near the median of the Pomona Freeway, and Plaintiff and Burresch were standing there. It would not have been reasonable or prudent for Burresch to remain on the freeway to complete his investigation. Although Burresch could have placed Plaintiff in his car, exited the freeway, and continued his investigation on the off-ramp, having placed Plaintiff in a patrol car it was equally reasonable for him to continue to the station to complete the processing.

Moreover, for Burresch to cause Plaintiff to be taken to the station by Officer French was entirely consistent with the Department of State guidelines, which authorized Burresch to "protect the safety and welfare of [the] populace ... to prevent the commission of a crime and ... where public safety is in imminent danger ... to intervene to the extent necessary to halt such activity." The VCCR provides that even for mere traffic violations (much less criminal offenses, such as "DUI"), an officer may, with the official's permission, take the official to the police station or other location where he may recover sufficiently to drive. Here, Burresch states in his declaration that, after explaining to Plaintiff that he was going to arrange transportation for Plaintiff to the station and then to Plaintiff's home, Plaintiff "appeared to agree." Burresch Decl. ¶ 6. Plaintiff has introduced no evidence that he did not agree.

Even if Plaintiff had introduced evidence that he did not agree with Burresch's deci-

sion to take him to the station in order to arrange transportation, this Court would have to grant Burresch's motion. Intoxication by its very nature creates not only a safety hazard but an impediment to making a reasoned decision. Therefore, when the official is drunk an officer may reasonably disregard the "permission" element of the option authorized by the VCCR to transport the official to the station.

### C. Breath Test.

■ Plaintiff's next argument is that the CHP Officer Defendants violated his rights by giving him a breath test. Plaintiff has submitted no evidence, however, that Burresch had anything to do with a breath test. Instead, the undisputed evidence is that Officer Gutierrez offered Plaintiff the test and that Defendant Myhre administered it.

As to Myhre, moreover, the Court must grant the motion because the evidence is undisputed that Gutierrez asked Plaintiff whether he would agree to take the test and that he agreed to do so. Salazar Decl. at ¶ 10 ("I was requested to submit to an intoxilier [sic] test."). *See also* Gutierrez Decl. ¶ 4 ("Plaintiff kept insisting that he was not drunk. I informed him that, although he was not required to take a blood alcohol test, he could take it voluntarily if he wished to support his claim. He told me that he wished to take the test. The test was administered by [Defendant] Officer Myhre."). That Plaintiff "did not volunteered [sic] to take said test" is not relevant because Plaintiff does not dispute that he submitted to the test. To be sure, his counsel claimed at the hearing that Salazar had no choice, but there is no evidence that Salazar was threatened,

beaten, tricked or coerced. He was asked and he agreed.

The undisputed evidence demonstrates that the conduct of Burresch and Myhre was in compliance with the VCCR, as interpreted by the Department of State Guidelines. Accordingly, this Court grants these Defendants' motion for summary judgment as to Plaintiff's claim under the VCCR.

### II. Claim for Damages for Violation of 42 U.S.C. § 1983 and the Alien Tort Act Based upon Defendants' Alleged Violation of the VCCR.

Plaintiff's claims that the CHP Officer Defendants violated 42 U.S.C. § 1983 and the Alien Tort Act, 28 U.S.C. § 1350,[8] are premised solely upon his allegation that these officers violated his rights under the VCCR. Because this Court concludes that no triable issue of material facts exists on Plaintiff's VCCR claim, the Court also grants these Defendants motion as to Plaintiff's claims under section 1983 and the Alien Tort Act.

### III. Claim for Violation of 18 U.S.C. § 112.

Plaintiff's claim for violation of 18 U.S.C. § 112[9] also is premised upon Burresch's alleged violation of the VCCR. Therefore, this Court must also grant Burresch's motion as to this claim.

■ Plaintiff's claim must be dismissed for the additional reason that Plaintiff has provided no authority or argument supporting his implicit contention that he may maintain a private right of action under this criminal statute. Whether a federal statute confers a private right of action

---

8. The Alien Tort Act, 28 U.S.C. § 1350 provides: "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."

9. 18 U.S.C. § 112(a) provides in pertinent part: "Whoever assaults, strikes, wounds, imprisons, or offers violence to a foreign official,

official guest, or internationally protected person or makes any other violent attack upon the person or liberty of such person, or, if likely to endanger his person or liberty, makes a violent attack upon his official premises, private accommodation, or means of transport or attempts to commit any of the foregoing shall be fined under this title or imprisoned not more than three years, or both."

where it does not expressly provide for one depends on four factors:

(i) the plaintiff must belong to the class for whose especial benefit the statute was created; (ii) the legislature must have shown an intent, either explicitly or implicitly, to create a private remedy; (iii) finding an implied cause of action must be consistent with the underlying purposes of the statute; and (iv) the cause of action must not be one that has traditionally been left to state law.... An evaluation of the other elements is not necessary if the court finds that Congress did not intend to create a private right of action.

*Stupy v. United States Postal Serv.*, 951 F.2d 1079, 1081 (9th Cir.1991) (holding that section of Postal Reorganization Act concerning employee promotion does not confer private right of action) (citing *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)). Plaintiff bears the burden of satisfying each of these factors. *Keaukaha–Panaewa Community Ass'n v. Hawaiian Homes Comm'n.*, 739 F.2d 1467, 1470–71 (9th Cir.1984).

*Cort v. Ash, supra,* involved an action by a stockholder against a corporation and its directors seeking damages for an alleged violation of 18 U.S.C. § 610, a criminal statute prohibiting corporations from making a contribution or expenditure in connection with a presidential election. In dismissing the action, the Court explained that it is especially difficult to find an implied civil cause of action in "a bare criminal statute, with absolutely no indication that civil enforcement of any kind was available to anyone." 422 U.S. at 80, 95 S.Ct. 2080 (but cautioning that this holding does not mean that "a bare criminal stat-ute can *never* be deemed sufficiently protective of some special group so as to give rise to a private cause of action by a member of that group") (emphasis in original).

Here, Plaintiff has offered absolutely no evidence or even argument to support his assertion of a private right of action under 18 U.S.C. § 112. Thus, this Court grants Burresch's motion for summary judgment on this claim.

## IV. Claim for False Arrest.

Plaintiff alleges that both Defendants Burresch and Myhre falsely arrested him. Plaintiff's complaint fails to specify the basis for this claim. *See* Complaint at ¶ 22: "The acts, omission and reckless conduct of Defendants, particularly J. Burresch, constituted false imprisonment and/or false arrest to the person of Salazar." Assuming Plaintiff intended to state a claim under the Fourth Amendment, the Court must dismiss the claim because he has introduced no evidence that Defendant Myhre was responsible for any non-consensual detention of Plaintiff and because Defendant Burresch would be entitled to qualified immunity.[10]

■ First, as to Defendant Myhre, Plaintiff complains only that he administered the breath test. That is no basis for a false arrest/imprisonment claim.

■ As to Defendant Burresch, Plaintiff does not contend that, under the circumstances, it would have been improper for Burresch to arrest him for driving under the influence if he had not otherwise been entitled to diplomatic protection. There is

---

**10.** An officer is entitled to qualified immunity if, "in light of clearly established principles governing the conduct in question, the officer objectively could have believed that his conduct was lawful." *Act Up!/Portland v. Bagley*, 988 F.2d 868, 871 (9th Cir.1993). "This standard requires a two-part analysis: 1) Was the law governing the official's conduct clearly established? 2) Under that law, could a reasonable officer have believed the conduct was lawful?" *Id.* While Plaintiff bears the burden of showing that the law was clearly established (*Collins v. Jordan*, 110 F.3d 1363, 1369 (9th Cir.1996)), "it is the defendant's burden to show that a reasonable officer could have believed, in light of the settled law, that he was not violating a constitutional or statutory right." *Id.* Where the underlying facts are not disputed, the Court must determine the issue of qualified immunity on a notion for summary judgment. *Act Up!*, 988 F.2d. at 873.

no triable issue as to whether Burresch's placing Plaintiff in handcuffs and transporting him to the station amounted to an unlawful "arrest." [11]

## V. Claim for Assault and Battery.

■ As with his unlawful arrest/imprisonment claim, Plaintiff nowhere states the legal basis for his claim for "assault and battery." Assuming it is premised on the Fourth Amendment,[12] the undisputed facts demonstrate that any amount of force Burresch utilized was reasonable under the circumstances. Moreover, a reasonable officer could reasonably have concluded that such force was warranted.

An excessive force claim is to be analyzed under the Fourth Amendment's "reasonableness" standard.

"[A]ll claims that law enforcement officers have used excessive force ... in the course of an arrest ... should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). *E.g., Ward v. City of San Jose,* 967 F.2d 280, 284 (9th Cir.1991).

Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.... [T]he "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them. *Graham,* 490 U.S. at 396–97, 109 S.Ct. at 1872 (internal quotations omitted). *E.g., Barlow,* 943 F.2d at 1135. "The question is not simply whether the force was necessary to accomplish a legitimate police objective; it is whether the force used was reasonable in light of all the relevant circumstances." *Hammer v. Gross,* 932 F.2d 842, 846 (9th Cir.) (en banc), *cert. denied,* 502 U.S. 980, 112 S.Ct. 582, 116 L.Ed.2d 607 (1991).

*Forrester v. City of San Diego,* 25 F.3d 804, 806 (9th Cir.1994) (affirming jury's verdict that police did not use excessive force to remove protesters from abortion clinics when police used "pain compliance" techniques to remove protesters who otherwise went limp and who were warned by the officers that such techniques would be used if they did not cooperate). *See also Graham,* 490 U.S. at 396–97, 109 S.Ct. 1865 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.").

Although reasonableness is normally a jury question, "defendants can still win on summary judgment if the district court concludes after resolving all facts in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." *Scott v. Henrich,* 39 F.3d 912, 914 (9th Cir.1994), *cert. denied,* 515

---

**11.** Even if Plaintiff intended to state a claim under California law for the common law tort of false arrest or imprisonment, this Court would dismiss that claim because, like a Fourth Amendment claim for false arrest, Penal Code section 847 creates qualified immunity.

**12.** Plaintiff's section 1983 claim discusses only Defendants' alleged violation of Plaintiff's "federal treaty rights." In the introduction to the complaint at ¶ 2 and in the complaint's jurisdictional section at ¶ 3, however, Plaintiff states that this action is brought pursuant to various constitutional amendments, including the Fourth Amendment.

U.S. 1159, 115 S.Ct. 2612, 132 L.Ed.2d 855 (1995) (affirming summary judgment for defendants in police excessive force case).

Here, the only evidence Plaintiff submitted is that, in handcuffing Plaintiff, Burresch "shoved me against my car[.]" Salazar Decl. at ¶ 7. Plaintiff submitted no evidence that he had communicated a willingness to be handcuffed without being forced or that he sustained any injury from this "shove." The undisputed facts show that Plaintiff had just been in a serious automobile accident, appeared intoxicated, had the smell of alcohol on his breach, was standing in the median of the freeway with traffic going by, was shouting and was flailing his arms about wildly. Moreover, as Burresch began to frisk Plaintiff for weapons, Plaintiff attempted to spin around and pull away from his grasp, and began yelling in Spanish and in English. Under these circumstances, Burresch used appropriate force after reasonably concluding that it was necessary to handcuff Plaintiff, both for personal and public safety reasons.

## CONCLUSION

For all the above-stated reasons, and good cause appearing therefor, the Court hereby GRANTS the motion for summary judgment of Defendants Burresch and Myhre. The clerk is directed to close this case.

IT IS SO ORDERED.