**Althea SYTHE, Plaintiff,**

v.

**CITY OF EUREKA, et al., Defendants.**

**No. C 98–3843 JL.**

United States District Court, N.D. California.

Dec. 27, 1999.

As Amended Jan. 28, 2000.

Dennis Cunningham, San Francisco, CA, for plaintiff.

Nancy K. Delaney, William F. Mitchell, Mitchell Brisso Delaney & Vrieze, Eureka, CA, for defendants.

ORDER GRANTING PLAINTIFF'S MOTION AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON QUALIFIED IMMUNITY

LARSON, United States Magistrate Judge.

## INTRODUCTION

The parties filed cross-motions for summary judgment asking this Court to determine whether the individual defendant police officers are entitled to the defense of qualified immunity. The matter came on for hearing July 21, 1999. Dennis Cunningham appeared on behalf of Plaintiff. Nancy K. Delaney appeared on behalf of Defendants.

## FACTUAL BACKGROUND

On October 6, 1997 there was a protest demonstration sponsored by several environmental groups entitled "Street Theater Action to Save Headwaters" in Eureka, California. The police had a verbal understanding with the protestors to keep their parade on the sidewalks. Sometime during the parade, a protestor, dressed as a clown or jester, refused police orders to return to the sidewalk from the street. The police attempted to arrest the man with the assistance of a mounted patrol. As they did so, a small group of marchers sat down in the street at the scene of the arrest.

Captain William Honsal ("Captain Honsal") of the Eureka Police Department was standing in the midst of the seated group when he either stumbled and fell or was pushed or pulled forward. Sometime later Captain Honsal realized that his PR 24 Police Baton ("baton") was missing. There is conflicting testimony in the state court proceedings from the officer himself as to whether it was 15 to 20 minutes later or at a time when he had moved approximately 20 feet from the place where he hit the ground. The baton is twenty-four inches long and attached to the officer's belt by a non-swivelling D-ring secured by a leather strap.[1]

By his own admission, Captain Honsal's attention throughout the incident was directed to preventing the crowd from physically releasing the arrestee from custody. He was unaware of the loss of the baton until some time later.[2] He had last felt it clipped to his belt before the police action began.[3] At the preliminary hearing in state court he testified that he came to believe that he had lost the baton at the time when Plaintiff was next to him, but only after viewing a police videotape of the incident.[4]

A police officer had videotaped and photographed the parade, including the arrest of the demonstrator. Several officers, all of whom are defendants in the case at bar, eventually reviewed the tape and still pictures. They were Officer Honsal, Detective Parris, Officer Walser, Officer Fuller, Detective Lawson, and Officer Sousa. The Defendant Officers decided, based on her proximity and movements recorded on tape that a female protestor, later identified by Officer Sousa as Althea Sythe ("Plaintiff"), had stolen Captain Honsal's baton. Acting on information from Officer Sousa, the officers decided to look for Plaintiff on the campus of Humboldt State University.[5]

1. Preliminary Hearing Transcript, pp. 5–6, 14–15.

2. Preliminary Hearing Transcript 12: 11–27.

3. Preliminary Hearing Transcript 9:23–10:10.

4. Preliminary Hearing Transcript 18:9–11.

5. Preliminary Hearing Transcript at pages 44–45.

On October 22, 1997 Plaintiff was approached by officers as she was leaving an evening class at Humboldt State. The officers informed her that they were investigating the theft of a policeman's baton during the October 6 demonstration [6]. Plaintiff told the officers that she had been at the demonstration but knew nothing about any baton.[7] The officers asked Plaintiff her name and when she refused to give it the officers arrested her.

In a subsequent declaration of probable cause, the officers stated "the tape shows the female [Plaintiff] taking the baton, concealing it in the left sleeve of her jacket and immediately leaving the crown." Following Plaintiff's arrest a search warrant was obtained for her premises, where she lived with several others.

The affidavit in support of the search warrant stated: "On 10–14–97 I reviewed the tape ... and saw a white female adult on [Captain Honsal's] left side. The female removed the baton and placed it between her arm and her jacket. She immediately turned away and exited the crowd." Further on, the attesting officer stated, "[t]he Affiant believes that Althea Sythe is seen in the video taken by the Eureka Police Department when she is unlawfully removing [Captain Honsal's] city-owned baton."

Plaintiff's residence was searched shortly after 2:00 a.m. on October 23, 1997 by Eureka Police Officers. The police did not find the missing baton.

Plaintiff was nevertheless charged with felony grand theft. At the preliminary hearing the charges were dismissed by the judge. The judge stated that he couldn't see how Plaintiff could have moved her arm as she did in the videotape if she were concealing a police baton.[8]

## PROCEDURAL BACKGROUND

The parties agree that the decision to charge the offense and arrest of Plaintiff was based on an independent review of the videotape by law enforcement officers, who recognized Plaintiff as the woman in the green jacket depicted in the film. Plaintiff does not dispute that she was the woman in the green jacket.

On October 5, 1998, Plaintiff filed suit in Federal District Court seeking $1 million in damages under 42 U.S.C. § 1983, for violation of her civil rights under the Fourth Amendment to the U.S. Constitution, as well as Art. One, §§ 1, 7 & 13 of the California Constitution, and California Civil Code No. 52.1. Named as defendants were the City of Eureka, the above-named officers and John and Jane Does # 1–20.

In March 1999, both parties consented to have this Court conduct any and all proceedings in this case, pursuant to 28 U.S.C. § 636(c).

By stipulation of the parties, a case management conference was scheduled for May 5, 1999. Neither party appeared on that date and the case management conference was rescheduled for June 2, 1999. On that date, the police videotape of the October 1997 demonstration was viewed and this Court entertained comments from counsel.

This Court was asked to make a preliminary determination as to whether, based on the videotapes [9] jointly submitted by the parties, there was probable cause to

---

6. The arresting officer gave conflicting versions of what he said to Plaintiff, and what she said to him. In some versions she volunteered that she did not know anything about the police baton, even before he asked her about it. The officer testified that in his report he says, "I informed the female that I was investigating a theft of a police officer's baton that occurred on 10–6–97." Preliminary Hearing Transcript 63:2–9. Whatever Plaintiff said, her statement at the time of her arrest was not used, either in the affidavit for the search warrant, or for the statement of probable cause for arrest.

7. Preliminary Hearing Transcript at pages 62–63.

8. Preliminary Hearing Transcript at page 77.

9. The parties submitted several versions, in real time and slow motion.

arrest Plaintiff on charges of theft. On June 30, 1999, the Court found that the totality of facts and circumstances contained in three editions of the videotape presented to the Court did not amount to probable cause to charge or arrest Plaintiff for the offense of theft.

Plaintiff's subsequent Motion re: Qualified Immunity as well as Defendants' declarations filed after the June 2, 1999 hearing in response to the Court's invitation for further briefing are before the court.

## DISCUSSION OF 42 U.S.C. § 1983

Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

This statute was enacted to aid in " 'the preservation of human liberty and human rights.' " *Owen v. City of Independence, Mo.,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), *quoting* Cong. Globe, 42d Cong., 1st Sess., App. 68 (1871) (Rep.Shellabarger). (A municipality has no immunity from liability under § 1983 flowing from its constitutional violations and may not assert the good faith of its officers as a defense to such liability.) This reflects a congressional judgment that a "damages remedy against the offending party is a vital component of any scheme for vindicating cherished constitutional guarantees," *Id.* at 651, 100 S.Ct. 1398. As remedial legislation, § 1983 is to be construed generously to further its primary purpose. *Id.* at 636, 100 S.Ct. 1398.

## QUALIFIED IMMUNITY IS
## AN ISSUE OF LAW

Whenever there is no genuine dispute of material fact, qualified immunity presents a question of law. *Act Up!/Portland v. Bagley,* 988 F.2d 868, 871 (9th Cir.1993).

*See also Hyland v. Wonder,* 117 F.3d 405, 409 (9th Cir.1997), *cert. denied,* 522 U.S. 1148, 118 S.Ct. 1166, 140 L.Ed.2d 177 (1998) (Whether a public official is entitled to qualified immunity is a question of law). *See, among others, Ansley v. Heinrich,* 925 F.2d 1339, 1341 (11th Cir.1991) (Whether qualified immunity is available as a defense is a question of law for the court); *Warren v. City of Lincoln, Neb.,* 816 F.2d 1254, 1261 (8th Cir.1987) ("We now make it clear that the question of whether the defendants are entitled to qualified immunity is a question of law to be determined by the trial court.") *Langley v. Adams County, Colo.,* 987 F.2d 1473, 1476 (10th Cir.1993) ("The presence or absence of qualified immunity is a question of law, which we review de novo.").

When determining qualified immunity on summary judgment, the Court "must assume the nonmoving party's version of the facts to be correct." *Liston v. County of Riverside,* 120 F.3d 965, 977 (9th Cir. 1997). Although the question should be determined at the earliest possible point in the litigation, summary judgment is inappropriate where a genuine issue of material fact prevents a resolution of this question before trial on the merits. *See Act/Up! Portland,* 988 F.2d at 871–72.

In the Ninth Circuit, when a police officer asserts qualified immunity as a defense to an action for Fourth Amendment violations, the court must analyze the plaintiff's case under a two-part analysis. *Act Up!/Portland v. Bagley,* 988 F.2d 868, 871 (9th Cir.1993). These determinations are questions of law for the court to decide, at least "in cases in which there is no genuine issue of disputed material facts." *Id.* at 873; *see also Washington v. Lambert,* 98 F.3d 1181, 1192 (9th Cir.1996).

First, the court must find that the plaintiff has clearly established the right at issue and stated it with particularity. *Alexander v. County of Los Angeles,* 64 F.3d 1315, 1319 (9th Cir.1995) "The contours of the right must be sufficiently clear that a reasonable official would understand that

what he is doing violates that right." *Id.* (*quoting Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

Since a reasonable public official, particularly a police officer, is expected to know the law, the court's inquiry is nothing more than an examination of whether the actions at issue violated "clearly established ... constitutional rights." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

■ A clearly established right is one so thoroughly developed and recognized as to be "indisputable" and "unquestioned." *See Zweibon v. Mitchell,* 720 F.2d 162, 172–73 (D.C.Cir.1983). Although Plaintiff bears the initial burden to prove that the law was "clearly established," Defendants thereafter carry the burden to show that their conduct was reasonable. *Romero v. Kitsap County,* 931 F.2d 624, 627 (9th Cir.1991).

The second part of the court's analysis of qualified immunity of police officers consists of two hurdles:

1) probable cause must be shown not to have existed [and]

2) the officers must be shown not to have reasonably believed in good faith that probable cause did exist.

*Maag v. Wessler,* 993 F.2d 718, 720 (9th Cir.1993).

## QUALIFIED IMMUNITY AND FALSE ARREST

■ Government officials performing their discretionary duties are entitled to qualified immunity unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Thorsted v. Kelly,* 858 F.2d 571, 573 (9th Cir.1988), quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Thus, even if officers mistakenly believe that probable cause to arrest exists, they are nonetheless immune from suit if their mistake was reasonable, in light of clearly established law and the information the officers possessed at the time. *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Hunter v. Bryant,* 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). There is no qualified immunity where officers act "deaf" to explanations offered by an arrestee or "blind" to documentary evidence presented to them. *Henderson v. Mohave County Arizona,* 54 F.3d 592, 595 (9th Cir.1995).

## WARRANT REQUIREMENT

The right at issue in the case at bar is protected by the Constitution:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

U.S. Const. amend. IV.

## SUFFICIENCY OF AN AFFIDAVIT IN SUPPORT OF A WARRANT

The law is clearly established that before a person may be arrested or a valid warrant be issued, the investigating officers must have probable cause. A judicial officer issuing a search warrant must be supplied with sufficient information to support an independent judgment that "probable cause" exists for the issuance of the warrant. U.S. Const. amend. IV; *Whiteley v. Warden, Wyoming State Penitentiary,* 401 U.S. 560, 564, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The probable cause standard for arrest and issuance of a warrant are the same.

The duty of a reviewing court is to ensure that the magistrate who issued the warrant had a "substantial basis" for con-

cluding that probable cause existed. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). (The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. The duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.) *Id.* at 239, 103 S.Ct. 2317.

If, in the case at bar, the officers presented an affidavit for a search warrant in which they made materially false statements or omissions, either knowingly, or in reckless disregard for the truth, and the affidavit without those statements would not have supported a finding of probable cause, the subsequent search and arrest violated Plaintiff's rights under the Fourth Amendment. *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). (If defendant establishes by a preponderance of the evidence that the false statement was included in the affidavit by the affiant knowingly and intentionally, or with reckless disregard for the truth, and the false statement was necessary to the finding of probable cause, then the search warrant must be voided and the fruits of the search excluded from the trial to the same extent as if probable cause was lacking on the face of the affidavit.) *Id.* at 154–155, 98 S.Ct. 2674.

If officers violate the clearly established *Franks* standard when they draft and submit an affidavit to a magistrate to justify issuance of a warrant, then they could not objectively believe the warrant was issued upon probable cause. A reasonable law enforcement officer would not decide to seek such a warrant. "The issue is not whether [an] affidavit actually establishes probable cause, but rather whether the officer had an objectively reasonable belief that it established probable cause."

*Thompson v. Reuting,* 968 F.2d 756, 760 (8th Cir.1992).

After the warrant is issued, and officers make an allegedly unconstitutional search and seizure, "[the Court's] good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Leon,* 468 U.S. 897, 922, n. 23, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) "Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Id.* at 923, 104 S.Ct. 3405, *citing Franks.*

*But see Branch v. Tunnell,* 14 F.3d 449, 452 (9th Cir.1994) (requiring a heightened pleading standard for § 1983 cases where knowledge or intent is an element of the plaintiff's constitutional tort); *Alexander v. City and County of San Francisco,* 29 F.3d 1355 (9th Cir.1994) (reversing summary judgment for defendants on Fourth Amendment claim because a genuine dispute existed as to why defendants ordered the storming of a house).

## ANALYSIS

For this Court to find qualified immunity for the individual officers in the case at bar, it must reach two conclusions:

First, that the law governing the officers' conduct was clearly established; and second, under that law, that a reasonable officer could have believed the conduct was lawful. *Act Up!,* 988 F.2d at 871. Both parts of the qualified immunity analysis are questions of law. *Id.* at 873. Only two factual questions may preclude a determination of qualified immunity on summary judgment: (1) a dispute over the facts and circumstances within the officer's knowledge; and (2) a dispute over what the officer and claimant did or failed to do. *Id.*

There are no genuine material issues of fact in the case before this Court. The parties agree that the officers relied on the videotape of the demonstration in preparing their affidavit in support of the application for a search warrant and in making their statement of probable cause to charge Plaintiff. The parties also agree on the circumstances of the arrest and of the search. Therefore the issue of whether or not the Defendants can validly assert the defense of qualified immunity is a question of law for the court to decide.

Plaintiff has stated the clearly established constitutional right at issue, satisfying the first part of the two step analysis required under *Alexander* and related cases. Plaintiff asserts that by submitting a knowingly false affidavit under oath in support of a warrant for search of her home, the Defendants violated Plaintiff's right to be free from unreasonable search and seizure under the Fourth Amendment. Plaintiff submits that Defendants' claims that the video tape depicted her removing Captain Honsal's baton and placing it between her arm and jacket were knowingly false, and therefore their submission as to probable cause was not reasonable even if mistaken.

This court's own review of the videotape supports Plaintiff's assertion. This Court found no probable cause to support the statement of probable cause and the affidavit in support of the search warrant based on what was depicted in the tape.

 With a finding of no probable cause to arrest Plaintiff or to search her house, under the analysis outlined by the court in *Maag*, it remains for Plaintiff to establish that the officers could not have had a reasonable belief that their conduct was lawful. The officers base their entire case against Plaintiff and their defense to her lawsuit on what is depicted in the videotape. The Ninth Circuit has reaffirmed that officers submitting false information in a warrant affidavit may forfeit the defense of qualified immunity.

A police officer who recklessly or knowingly includes false material information in, or omits material information from, a search warrant affidavit 'cannot be said to have acted in an objectively reasonable manner, and the shield of qualified immunity is lost.'

Thus, in order to survive a motion for summary judgment in a section 1983 case involving a *Franks* claim, the plaintiff need only 'establish a substantial showing of a deliberate falsehood or reckless disregard and establish that, without the dishonestly included or omitted information . . . the affidavit is insufficient to establish probable cause.'

*Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1295 (9th Cir.1999) (citations omitted.)

In their affidavits and initial representations to the court which issued the warrant, the officers flatly swore that the videotape showed Plaintiff removing Captain Honsal's baton. There is not one second of videotape depicting Plaintiff removing the baton from Captain Honsal's possession. In addition, the tape depicts Plaintiff moving her arm in a way that suggests she could not have hidden the twenty-four inch long baton under her jacket in the manner described by the officers.

Defendants attach great significance to Plaintiff's leaving the scene of the demonstration. Officers who were present testified that the command was given to the mounted officers to back their horses out of the area, since chemical spray was about to be used.[10] Plaintiff could reasonably have left the area to avoid being sprayed with chemical spray.

Despite alternative, reasonably explanations for Plaintiff's movements depicted in the videotape, the language of the police affidavits is clear and unqualified—and simply untrue.

This court must now determine whether "reasonable officers" could have believed what they said was depicted in the video-

---

**10.** Preliminary Hearing Transcript at page 67.

tape. The officers had the videotape for two weeks before seeking a warrant. They played it numerous times in their attempts to identify Plaintiff.[11] It strains credulity that veteran police officers could mistakenly assert that the video depicts Plaintiff taking the baton.

Even applying the heightened standard in *Branch* and *Alexander*, this Court has no alternative except to find that the officers intentionally misstated the facts in their affidavit, violating the standard established by the Supreme Court in *Franks*. The officers could not have objectively believed the warrant was issued upon probable cause. Reasonable law enforcement officers would not decide to seek a warrant based on the evidence in the videotape. They could not have reasonably believed their conduct to be lawful. Qualified immunity is not available to these officers as a defense to Plaintiff's suit.

## CONCLUSION

Plaintiff has met her burden to defeat the Defendants' claim of qualified immunity as a defense to her suit under 42 U.S.C. § 1983. The issue begins and ends with the Defendants' own videotape. The officers have claimed throughout these proceedings that the videotape speaks for itself. Two courts have reviewed the videotape. The first dismissed the criminal charges against Plaintiff; the second, this Court, found that, based on the videotape, the officers did not have probable cause to arrest Plaintiff.

Plaintiff has argued persuasively that the officers' actions were not the result of a reasonable mistake. The videotape does not show what the officers claimed it shows. The officers could only have misrepresented the videotape to the magistrate when they obtained a warrant for search of Plaintiff's home. Plaintiff's Motion for Summary Judgment on Qualified

Immunity is granted. Defendants' Motion is denied.

---

11. Preliminary Hearing Transcript 41:11–14.