**James P. BROULETTE, Plaintiff,**

v.

**Sgt. STARNS, et al., Defendants.**

**No. CV96–2652–PHX–SRB.**

United States District Court,
D. Arizona.

Aug. 27, 2001.

James P Broulette, pro se, Florence, AZ.

Dean Edward Brekke, Office of Attorney General, Liability Management Section, Phoenix, AZ, for D Starns.

BOLTON, District Judge.

This matter was tried before this Court on July 31, 2001 and August 1, 2001. The Court, having considered the testimony of the witnesses, having reviewed the exhibits admitted into evidence, and having considered the arguments of Plaintiff and counsel for the Defendants, issues its findings of fact and conclusions of law.

## FINDINGS OF FACT

1. At all times material to this case Plaintiff, James Broulette, was an inmate incarcerated in the Arizona Department of Corrections (ADOC).

2. In 1996, James Broulette subscribed to *Hustler* magazine and was sent 13 issues of that magazine commencing July 1996.

3. Plaintiff received only 3 of the 13 issues to which he subscribed. Ten of those issues were seized by Defendant Dallas Starns as obscenity.

4. The *Hook* Consent Decree dated October 19, 1973 guaranteed that inmates in the Arizona Department of Corrections would receive publications unless those publications contained "instructions on the manufacturing of homemade weapons, bombs, explosives, escape materials, brewing of alcoholic beverages, or if they otherwise contain material which constitutes a direct and immediate threat to security, safety, or order of the institution, or if they contained any material which is deemed obscene under applicable constitutional standards." (Exhibit 1). In this case, it is conceded by the Defendants that the only reason for the refusal to deliver the *Hustler* magazines to the Plaintiff was the determination that they contained material deemed obscene and that there was no other legitimate penologic interest for excluding these magazines.

5. The requirements of the *Hook* Decree were incorporated within ADOC Internal Management Policy (IMP)302.4. That policy regulating inmate mail defined as contraband any item of obscenity as defined by A.R.S. § 13–3501 et seq. The parties agree that the standard set out in A.R.S. § 13–3501 is the constitutional standard.

6. During the time that Plaintiff had his subscription to *Hustler* magazine Defendant Starns was employed in the mail room. Starns' responsibility included an initial review of incoming magazines before delivering them to the inmates. Defendant Starns reviewed the magazines only to determine if pictures in the magazines depicted specific types of sexual acts and if they did he forwarded the issue to the Deputy Warden, Defendant Donald Schiavo, for a determination of whether the issue was obscene. Defendant Starns did not make the obscenity determination but only made an initial review of the incoming magazines. Under the policy, it was Defendant Starns who signed the form advising the inmate that his magazine was confiscated as contraband due to obscenity.

7. It is undisputed that Deputy Warden Schiavo did not apply the constitutional standard required by the *Hook* Decree or the statutory standard required by policy in determining that 10 of Broulette's 13 *Hustler* magazines were obscene. Defendant Schiavo admitted that he reviewed the magazines only to determine if they depicted specific sexual acts and, if they did, contrabanded the magazines as obscene. Defendants concede that Defendant Schiavo made the determination of obscenity without considering whether the magazine taken as a whole lacked serious literary, artistic, political, or scientific value.

8. Defendant Schiavo was aware of the requirements of IMP 304.2 [1] and admitted that he had reviewed the definition of obscenity in A.R.S. § 13–3501. He further admitted that he was aware of the requirements of *Hook* Decree. Pursuant to IMP 304.2, Broulette appealed the withholding of his magazines to Schiavo and pointed out to him in his inmate letters the specific reason why these magazines were not obscene citing A.R.S. § 13–3501. For example, in relation to the seizure of *Hustler* magazine in December 1996, Broulette wrote to Schiavo "However, *Hustler* is not obscene pursuant to A.R.S. § 13–3501(2) because they have literary and/or political value." (Exhibit 13). Schiavo's response does not respond to this specific reference to the obscenity definition and instead justifies the seizure because "The magazine displayed photos of homosexual acts, sexual penetration, and oral sex." (Exhibit 14). In January 1996 Broulette pointed out to Schiavo in an inmate letter "These magazines are not obscene pursuant to A.R.S. § 13–3501(2) regardless of the explicit sexual content because they contain literary and/or political value." (Exhibit 16). In another inmate letter, Broulette told Schiavo about the October 1996 special master's report that indicated that ADOC was not applying the obscenity definition properly. (Exhibit 17). Schiavo responded "The magazine displayed photos of homosexual activities, sexual penetration and oral sex... This magazine meets the definition of contraband as any (sic) item of obscenity as defined in A.R.S. § 13–3501 through § 13–3508." (Exhibit 18).

9. Pursuant to policy, Schiavo also met with the Plaintiff to discuss the contrabanded magazines. Plaintiff again told Schiavo that he was not applying the statutory or constitutional definition of obscenity. Schiavo persisted in his insistence that the depiction of specific sexual acts was sufficient for the magazines to be contrabanded as obscenity.

10. On December 15, 1995 Defendant Terry Stewart became the director of the Arizona Department of Corrections.

11. On January 12, 1996 the court administering the *Hook* Decree appointed Special Master Janet Bliss to monitor the Decree as it related to inmate publications and report her findings, conclusions, and recommendations. In October 1996 Special Master Bliss reported that ADOC was contrabanding adult magazines based on an improper standard and cited a specific Internal Management Policy in Tucson that stated that material was obscene if it was "offensive to accepted local standards of decency or appealing to prurient interest pursuant to A.R.S. § 13–3501." She pointed out in her report that A.R.S. § 13–3501 is based on the constitutional standard set forth in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) requiring a three prong test, the third prong of which requires that the publication as a whole lacked serious literary, artistic, political or scientific value. She reported that ADOC was not applying all three prongs and was contrabanding magazines based on the first two prongs and completely ignoring the third prong of the test. While this IMP in Tucson was not applicable to the Eyman Complex where Plaintiff was housed during the relevant time period, the undisputed testimony shows that this same policy was being applied to Plaintiff's publications. Director Stewart became aware of the spe-

---

1. Defendants stipulated that sometime after Defendant Stewart became the Director of ADOC, IMP 304.2 was replaced by Director's Order 909. DO 909 remained in effect until November 1998 and contained identical language as IMP language as IMP 302.4 regarding obscenity review of inmate publications.

cial master's report shortly after it was issued.

12. In September 1998 another judge of this court issued an order in the *Hook* case based on a motion to enforce the Consent Decree regarding publications. After reviewing the parties' submissions and the special master's report, the Court concluded that ADOC was not applying the applicable constitutional standard for obscenity and was confiscating adult magazines based solely on certain sexual acts being depicted. The Court ordered that when withholding adult magazines from inmates based on obscenity, ADOC must apply the constitutional standard for obscenity set forth in *Miller v. California,* and indicate the reason for withholding such magazines in relation to that standard. ADOC was further ordered to retract any internal procedures regarding the confiscation of adult magazines inconsistent with the constitutional standard for obscenity.

13. It was only after the 1998 Court order that Director Stewart took action to attempt to have the proper constitutional standard applied to publications.

14. While Director Stewart was not required to take action in response to Special Master Bliss' report, this report placed him on notice that ADOC was not complying with the *Hook* Decree and with ADOC policy.

15. In preparation for this lawsuit, Plaintiff ordered the 10 contrabanded issues of *Hustler* magazine so that they would be available for exhibits at trial. Those ten issues were reviewed pursuant to the new policy adopted as DO 909 effective October 11, 1999. That policy at part 909.02 1.7–1.7.4.3 requires publications to be seized as contraband if deemed obscene under applicable constitutional standards. The policy requires that a publication be deemed obscene when all three prongs of the constitutional test apply and accurately recites at 1.7.4.1,2 and 3 the constitutional and statutory standard. Part 909.02 at 1.9.2 requires that when a publication is excluded as obscene that the specific criteria shall be listed on the notice detailing the specific reasons under each part of the three prong test why the criteria applies to the publication. This notice of result is required to be delivered to the inmate whose publication is being excluded.

16. When Plaintiff's ten *Hustler* magazines were reviewed under this new policy in January 2000 six of the ten previously contrabanded magazines were delivered to Plaintiff. Four were refused as obscene. The evidence reflects that ADOC did not comply with DO 909 nor apply the proper standard for obscenity as it relates to these four magazines. The November 1996 *Hustler* magazine contrabanded as obscene in January 2000 listed as the sole reason for exclusion "Bondage" under all three prongs of the obscenity test. (Exhibit 48). The February 1997 was excluded as obscene solely because of "Mutalation (sic)". (Exhibit 50). This explanation was contained in the part that indicated that it appealed to the prurient interest. No explanation on the second and third prong of the test was listed despite ADOC and the *Hook* Decree's requirement that the reasons be stated. Similarly, the March 1997 and August 1997 issues were excluded as obscene without explanation beyond the single word "Bondage" as to March 1997 (Exhibit 51) and "Masicusume (sic)" as to August 1997. (Exhibit 55).

17. This Court has reviewed the four *Hustler* magazines still at issue as allegedly obscene and concludes that these magazines would be deemed obscene if only the first two prongs of the three prong test were applicable. The magazines taken as a whole clearly appeal to prurient interest and each magazine depicts or describes in a patently offensive

way sexual activity. However, the magazines appear to deliberately have content that requires anyone applying the constitutional standard to conclude that the work taken as a whole has some serious literary, artistic, political, or scientific value. Each *Hustler* magazine follows a similar pattern. Each one has a page entitled "Bits and Pieces" which is in the nature of editorial comment and chooses a public figure or public entity each month for criticism. Each magazine always contains at least one serious, non-sexual article. Some of the issues contain fiction pieces. For example, the February 1997 issue that was contrabanded contained an article entitled "Medicash—How HMO's Milk Big Bucks From Our Broken Bones". The article is entirely serious, non-sexual, and relates to practices of some health maintenance organizations. The March 1997 issue of *Hustler* magazine contains an entirely serious, non-sexual article entitled "Heil Hitler, Americal Neo Nazi Christians and their Quest for an Aryan Nation." This article is an expose' and criticism of the Church of Jesus Christ Christian Aryan Nations and the 1996 Aryan Nations World Congress. The August 1997 issue contains an entirely serious, non-sexual report entitled "Tunnel Junkie–Notes from the New York City Underground". This article profiles the subway maze beneath New York City and the humans that live there. Each of these magazines taken as a whole contains some serious literary, artistic, political, or scientific value based on these articles and the editorial comment.

18. The November 1996 *Hustler* magazine contains a serious, non-sexual article entitled "Washington's Worst Congressman Headline Acts in Capital Hill's Hall of Shame". This article is a criticism of more than a dozen members of Congress that *Hustler* magazine judges to be the worst congressmen. This article is clearly one that constitutes political speech and saves this issue from obscenity as well.

19. Whether *Hustler* magazine only publishes articles, editorials, and fiction with literary, artistic, scientific, or political value in order to avoid an obscenity determination or whether it has a sincere interest in expressing these views or exposing certain issues is of no consequence. The constitutional standard does not inquire about the motive of the publisher. It only requires the determination of whether the publication taken as a whole lacks serious artistic, literary, political or scientific value. Each of these magazines taken as a whole has some value and cannot be found obscene applying the constitutional standard.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this case was brought pursuant to 42 U.S.C. § 1983, for alleged deprivation of rights secured by the Constitution.

2. Qualified immunity protects government officers from liability unless the law is clearly established and the party asserting qualified immunity objectively could not have believed that his conduct was lawful. The law on obscenity is clearly established and at all time material hereto ADOC policy correctly incorporated that law by reference to the three prong test set forth in A.R.S. § 13–3501.

■ 3. No person objectively applying the obscenity standard could have believed that a review of these magazines for the depiction of specific sexual acts only was sufficient to comply with the constitutional standard and ADOC policy. No person could have believed that the obscenity standard did not require the application of the third prong of the test and review of the allegedly obscene publication for serious scientific, literary, artistic or political value.

4. Defendant Starns is not liable for damages to the Plaintiff because he did not make any determination of obscenity. He was merely the conduit of the message that the publication was contrabanded.

5. Defendant Schiavo is admittedly liable in damages to the Plaintiff based on his failure to utilize the appropriate standard to determine obscenity even after that standard had been explicitly pointed out to him. (Defendants' Proposed Findings of Fact and Conclusions of Law).

6. Defendant Stewart is liable to the Plaintiff because he knew shortly after October 1996 that ADOC was not properly complying with the constitutional standard for obscenity nor with its own departmental policy. Director Stewart did nothing to train his officers after becoming aware of the facts contained in the special master's report to ensure compliance. No action was taken by Stewart to comply with the *Hook* Decree and the proper obscenity standard until after September 1998.

7. Plaintiff is entitled to compensatory damages in the amount of $65.00. Ten magazines belonging to the Plaintiff were destroyed. Although his cost was only $3.09 per magazine, he received that rate because of a subscription to one year of the magazine. At the time of the destruction of the magazine, he could acquire single issues at a cost of $6.50, which the Court determines to be the value of each magazine at the time of its destruction.

8. Plaintiff is not entitled to punitive damages from Defendant Schiavo or Defendant Stewart. Schiavo was wrong but did not intentionally deprive the Plaintiff of his rights. He acted upon instructions from his superiors which were wrong and testified credibly that even reviewing all of the information before him he still felt that the depiction of specific sexual acts made the magazine obscene.

9. Defendant Stewart took no steps to intentionally deprive the Plaintiff of his constitutional rights. He failed to act when he had information that should have caused him to inquire about whether the proper standard was being applied. When he was sure that this was the case he took action and adopted a policy intended to ensure compliance.

10. The Plaintiff is entitled to receive the November 1996, August 1997, March 1997, and February 1997 issues of *Hustler* magazine previously contrabanded. Those magazine are not obscene under the constitutional standard and were not reviewed in accordance with that standard or the policy of ADOC D0909.02.

## DISCUSSION

■ A defendant in a § 1983 action has qualified immunity from suit and from liability if, applying an objective standard, a reasonable officer could believe that his conduct was lawful in the light of clearly established law and the information possessed by the officer. *Hunter v. Bryant,* 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Act Up! Portland v. Bagley,* 988 F.2d 868 (9th Cir.1993). Defendants in this case concede that Defendant Schiavo was not entitled to qualified immunity for his actions because the law was clear and based on the information possessed by Schiavo, a reasonable officer in his position could not have believed that his conduct was in compliance with the *Hook* Decree and ADOC regulations for contrabanding obscenity. At issue before the Court is whether Defendant Terry Stewart, Director of the Department of Corrections, is also liable or is protected by qualified immunity.

Director Stewart testified that he became aware of the special master's October 1996 report shortly after it was issued. He also agreed that he took no action to

change the implementation of the obscenity policy until November 1998 in response to the Court order confirming that the standard of the *Hook* Decree was not being properly applied. Most of Plaintiff's magazines were contrabanded as obscenity after October 1996. While this Court does not dispute that ADOC has no obligation to comply with special master's recommendations until the Court has ruled on the report, the significance of the special master's report in this case is that it put Director Stewart on notice that the third prong of the obscenity test was not being applied despite the written policy that told deputy wardens that they were to apply the standard as set out in A.R.S. § 13–3501. The subsequent court order and the evidence at this trial reveals that despite the existence of a policy that advised deputy wardens of the correct standard, ADOC endorsed the application of a obscenity standard based exclusively on the depiction of specific sexual acts. Director Stewart testified that he was aware that there was a three prong test for obscenity, and was also aware that deputy wardens were examining publications for the depiction of specific acts that was not consistent with the standard. Once Director Stewart knew that deputy wardens were not applying the standard set forth in A.R.S. § 13–3501 required by his own policy and the *Hook* Decree, a reasonable officer in the position of Director Stewart could not have reasonably believed that allowing review of publications for depiction of specific sexual acts only to continue for another two years was lawful. Therefore the Court has determined that Director Stewart has personal liability along with Defendant Schiavo for the contrabanding of Plaintiff's magazines.

■ In determining that punitive damages should not be awarded against either Defendant Schiavo or Director Stewart, the Court has reviewed the applicable standards set forth in case law for punitive damages in § 1983 actions. In *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), the Supreme Court held that the fact finder would be permitted to assess punitive damages in a § 1983 action where a Defendant's conduct was shown to be motivated by evil motive or intent or when the conduct involves reckless or callous indifference to the federally protected rights of others. Intentional violations of federal law are also sufficient to trigger a fact finder's consideration of punitive damages. The evidence against Defendant Schiavo showed no intentional violations of federal law nor a reckless or callous disregard for the Plaintiff's First Amendment rights. Clearly there was no evil motive or intent to deprive Plaintiff of his rights. Defendant Schiavo suffered from a lack of training and understanding of the fact that pornography and obscenity are not the same thing. Sexually explicit material is not obscene when the publication as a whole has literary, scientific, artistic, or political value. Although the law is clear and if Defendant Schiavo had sought legal advice he would have known that review of pictures in the magazine only for specific sexual acts did not suffice, the Court does not believe his conduct was in reckless or callous disregard of the Plaintiff's First Amendment rights.

■ Similarly, as it relates to Director Stewart, although he had the tools at his disposal to satisfy himself that his policies were not being appropriately applied and the ability to change those misapplications of his policies, the evidence does not show that he was motivated by an evil motive or intent or failed to act in reckless or callous indifference to the First Amendment rights of the Plaintiff. Director Stewart is administering a department with thousands of inmates and employees governed by a complex series of laws and court

rulings. He has the unenviable task of being obligated to set rules for ensuring that his facilities are safe and secure and that the constitutional rights of inmates are not infringed. Upon receipt of the Court order confirming what the special master had said in 1996, Director Stewart took steps to correct the improper application of the constitutional standard of obscenity. And while the facts of this case show that in early 2000, shortly after the new policy became effective, there may have been misapplications of the standard, the Court does not find the facts and circumstances of this case to be such that punitive damages should be assessed.

Because this Court has determined that Plaintiff's First Amendment rights and rights under the *Hook* Decree have been violated, the Court has not discussed, nor is it necessary for it to discuss, Plaintiff's third theory for relief under 42 U.S.C. § 1983, that his rights to substantive due process have also been violated by the same conduct.

IT IS ORDERED that judgment be entered in favor Defendant Starns dismissing Plaintiff's complaint against him.

IT IS FURTHER ORDERED that judgment be entered in favor of Plaintiff and against Defendants Schiavo and Stewart for compensatory damages in the amount of $65.00.

IT IS FURTHER ORDERED that the four issues of *Hustler* magazine contrabanded in 2000 be delivered to the Plaintiff subject only to ADOC regulations on the total number of publications that an inmate can possess at any one time.

IT IS FURTHER ORDERED DENYING any requests for further declaratory or injunctive relief.

IT IS FURTHER ORDERED Plaintiff shall recover his costs pursuant to 28 U.S.C. § 1920 and the Court order dated June 22, 2001.